Thomas Rogers *et al.*

*v.*

John R. Tyley.

*Filed at Ottawa, October* 31, 1892.

1. Costs — *discretionary in chancery cases.* The awarding of costs in a court of chancery is a matter of discretion with the court, and the exercise of that discretion will not be reviewed except for abuse.

2. Same — *proceeding under Burnt Records act.* A proceeding to establish title under the Burnt Records act is a chancery proceeding and the rule in chancery as to costs is applicable.

3. Section 20 of the Burnt Records act does not make it the duty of the court to limit the costs, but simply fixes the maximum fees which officers and employees may charge, or be-allowed, for services rendered in proceedings under that act. If costs have been taxed in violation of the section, the remedy is by motion in the court below to re-tax them.

4. Trusts and Trustees — *declaration, as giving interest in land.* A., the holder of the legal title to land, executed a writing, declaring that B. had an equitable title to an undivided eighth of the same, with the privilege of taking another eighth thereof, and in which he agreed to convey to the latter an undivided eighth, or quarter part of the tract, whenever a deed should be demanded, or in case a sale should be made of the property, the latter should be entitled to one-eighth or one-quarter of the proceeds of such sale, subject to the mortgage of the holder of the legal title given for the purchase money: *Held,* that this invested B. with an interest in the land, and A., the trustee, had no power to divide the land and sell what might be considered one-eighth or one-quarter of it, and require B. to accept the proceeds in satisfaction of his interest in the whole tract.

5. Same — *whether beneficiary takes interest in land or its proceeds.* When several persons purchase land, each agreeing to pay his proportion of the price, and to take an undivided interest therein, and the legal title is taken to one of them, who gives his notes for the price, secured by a mortgage on the land, and the latter agrees to convey to the others their shares on demand, and to divide the proceeds in case of a sale, each of the others will take an interest in the land and not in its proceeds.

6. Same — *sale of land on request of cestui que trust.* A trustee holding the legal title to land may convey the same at the verbal request of the *cestui que trust* to a third person and pass the title. The statute of frauds has no application to such a case; such request may be shown by circumstances or parol proof as well as by writing.

7. Witness — *competency as against persons suing or defending as heirs.* A person, though interested in the event of a suit, is a competent witness in a suit against the heirs of a deceased person to testify to facts and transactions occurring after the death of the ancestor.

8. Evidence — *sufficiency to show a letter is not genuine.* Where a letter purporting to have been written many years before the trial, having the appearance of being written at its date, is found in the possession of the person to whom it is addressed and resembles the handwriting of the person alleged to have signed it, the fact of his denial of its execution, when it is evident that he is in doubt as to his writing the same, will not be sufficient to reverse a finding of the genuineness of such letter.

9. Same — *opinions of experts as to genuineness of signature.* The rule that, when the matters in issue do not so far partake of the nature of a science as to require a previous course of study in order to a knowledge of them, the opinion of experts is not admissible, has no application where the genuineness of writings and signatures is in issue. Whether two instruments were written by the same person, or whether signatures are the same, is clearly the subject of expert testimony.

10. Same — *proof of handwriting by comparison.* The general rule that the genuineness of a handwriting can not be proved or disproved by comparison, is subject to the exception, that if the instrument to be used as a standard is properly in evidence in the case for other purposes, then the signature or paper in question may be compared with it by the jury.

Appeal from the Circuit Court of Cook county; the Hon. L. C. Collins, Judge, presiding.

This is a proceeding under the "Burnt Records act" by appellee against appellants and others, to establish his title to the W. ½ of the E. ½ of the N. W. ¼ of the N. E. ¼ of the S. W. ¼ of sec. 35, T. 40 N., R. 13 E., Cook county, Illinois, being two and one-half acres of land. The petition sets out the chain of title with great particularity, which, briefly stated, is as follows: The government of the United States, by *mense* conveyances to James Fitzsimmons, the E. ½ of said S. W. ¼ of said sec. 35. On November 12, 1855, Fitzsimmons conveyed said 80-acre tract, to Benjamin W. Vandervoort, and he on March 7, 1856, conveyed the south half thereof, to one Hugh T. Reid. He also conveyed on July 20, 1858, to Charles R.

Day, the undivided $\frac{1}{2}$ of the N. $\frac{1}{2}$ of said 80 acre tract. On March 8, 1869, Henry A. Williams, as executor of said Vandervoort, by a power contained in his will, conveyed to Dwight F. Cameron the undivided $\frac{1}{4}$ of the W. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of said E. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$. On May 1, 1873, Cameron conveyed the undivided $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of said S. W. $\frac{1}{4}$ to George B. Griffin. Subsequently in a partition proceeding by said Griffin, against the heirs and executor of said Vandervoort, and the heirs and executors of said Charles R. Day, there was set off to him, Griffin, the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of said S. W. $\frac{1}{4}$ ; to the executor of said Vandervoort, the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of said S. W. $\frac{1}{4}$, and to the heirs of said Day, the east half of the N. E. $\frac{1}{4}$ of the said S. W. $\frac{1}{4}$. On August 1, 1876, said Griffin conveyed the ten acres so set off to him to Edward Maynard. On Jan. 13, 1877, Maynard conveyed the said W. $\frac{1}{2}$ of the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$, being the premises in controversy, to Ephraim A. Otis and he subsequently conveyed the same to appellee.

It is alleged in the petition that said 80 acre tract was purchased from said Fitzsimmons, under and in pursuance of a certain contract or agreement, whereby the said Benjamin W. Vandervoort was to be the owner of three undivided eighths, Jason Rogers, then living, the owner of one undivided eighth, with the privilege of taking another undivided eighth, John B. Russell and Isaac H. Trabue to be the owners of one undivided half of said property, the title to be taken in the name of said Benjamin W. Vandervoort. That under and in pursuance of said last mentioned agreement, the said Benjamin W. Vandervoort executed a declaration of trust in writing, duly signed by him as follows, to-wit :

" I, Benjamin W. Vandervoort, of the city of Paterson, State of New Jersey, purchased of James Fitzsimmons of the city of Chicago and State of Illinois, a certain tract of land known and described as the east half of the south-west quarter

of section thirty-five (35), township forty (40) north, range thirteen (13), containing eighty (80) acres, situated in Cook county, State of Illinois, as described in deed bearing date herewith, and whereas the title of said land property is standing in my name, I do hereby acknowledge, declare and affirm that Jason Rogers is interested and hath an equitable title to an undivided eighth of the purchase of said tract of land, with the privilege of taking another eighth of above described land, and I hereby further agree and covenant on my part that I will convey to him an undivided eighth or quarter part of said tract of land whenever a deed shall be demanded by him, or in case a sale shall be made of said property, then he shall be entitled to one-eighth or one-quarter of the proceeds of said sale, subject to the mortgage held by the said James Fitzsimmons on said land.

(Signed)                          B. W. VANDERVOORT."

And the said John B. Russell, Isaac H. Trabue and Jason Rogers executed an agreement in writing, duly signed by them as follows, to-wit:

"Whereas B. W. Vandervoort, of Paterson, in the county of Passaic, and State of New Jersey, this day purchased from James Fitzsimmons, a certain tract of land in the county of Cook, known and described as the east half of the south-west quarter of section (35) thirty-five, township (40) forty north, range (13) thirteen, containing eighty (80) acres, situated in Cook county, Illinois.

"And, whereas, the said Benjamin W. Vandervoort has given unto J. B. F. Russell and Isaac H. Trabue, of the city of Chicago, and Jason Rogers, of Paterson, an agreement in writing, acknowledging that they are jointly interested in the said purchase with the said Vandervoort; and, whereas, the said Vandervoort has given his certain three promissory notes for three thousand dollars, payable in one, two and three years each; and, whereas, the said Russell and Trabue are, by the

aforesaid agreement and writing, made by the said Vander-voort, entitled to the one-half of the lands purchased, and the said Rogers to the one-eighth part of the lands purchased: Now, we, the said Russell and Trabue, and the said Jason Rogers, do severally agree, on our part, to pay unto the said Benjamin W. Vandervoort, our proportion of the said notes when they become due and payable; that is, the said Russell and Trabue the one-half, and the said Rogers the one-eighth part of the said notes.

     " CHICAGO, Nov. 12, 1855.         " J. B. F. RUSSELL,
          [Signed]                 " ISAAC H. TRABUE,
                                      " JASON ROGERS."

While it is alleged that said declaration of trust and agreement were never recorded, it is not averred that petitioner, or any of the parties through whom he deraigns his title, took the same without notice of the trust. The allegations of the petition as to the extinguishment of said Rogers' interest in the land are as follows:

"That on or about the 20th day of July, 1858, said Jason Rogers sold his interest in said south-west ¼ of said section 35, being ¼ interest, including his said option therein, to one Charles R. Day, and in pursuance, and in fulfillment of said sale, and at the express request of said Jason Rogers, said Benjamin W. Vandervoort, and Mary D. Vandervoort, his wife, on the 20th day of July, 1858, by warranty deed of said last mentioned date, duly acknowledged and recorded, * * * conveyed to one Charles R. Day, one undivided ½ of the north ½ of the east ½ of said south-west ¼ of said section 35. That said conveyance, so made, as aforesaid, at the express request of said Jason Rogers, was accepted by said Rogers, in full payment and satisfaction of all claim, right, title, interest, and demand, in and to the whole, and every part of said land, so purchased from said James Fitzsimmons, the title of which,

by agreement, so as aforesaid, was taken in the name of said Benjamin W. Vandervoort."

It is further alleged, that this deed was duly recorded in the office of the recorder of deeds of Cook county, about the time of its execution and delivery, and again after the fire of October 8 and 9, 1871, and that in said deed it was "incorrectly recited that the same was held in trust by said first party (meaning thereby, said Vandervoort), for J. B. F. Russell, Isaac H. Trabue and Jason Rogers, the fact being that said Jason Rogers had only a one-quarter interest, and said Russell and Trabue had only a one-half interest in said eighty acres."

The allegation upon which the prayer for relief is based is as follows: "But your petitioner further shows unto your Honor, that by reason of the recital as aforesaid in the deed before mentioned of the 20th of July, 1858, by said Benjamin W. Vandervoort and Mary D. Vandervoort, his wife, to said Charles R. Day, of the undivided one-half, of the north one-half, of the east half, of said south-west quarter, of said section thirty-five, and the record thereof, referring to the interest of said John B. F. Russell, Isaac H. Trabue and Jason Rogers, it might be claimed that there were real, or apparent interests in, or claims to, the premises so owned and vested in your petitioner, in John B. F. Russell, Isaac H. Trabue and Jason Rogers, or in their respective heirs or devisees."

It also appears from said petition that the said Jason Rogers died August 25, 1868, testate; that by his will he made no mention of the said premises, but devised all his real estate in trust, appellants being the only present trustees under said will. All the defendants to the petition, except these appellants, by their answers, admitted the allegations of the petition to be true. Appellants take no exception to the sufficiency of the petition, nor do they deny any of its allegations. They simply say, they have no knowledge of the matters and things therein set forth, but demand strict proof thereof. They also pleaded

42—144 Ill.

the statute of frauds to that part of the petition which avers that the deed from said Vandervoort to Charles R. Day was made at the request of said Jason Rogers.

The decree below was according to the prayer of the petition adjudging all the costs against appellants. From that decree this appeal is prosecuted.

Mr. LYNDEN EVANS and Mr. FREDERICK ARND, for the appellants:

The decree awarding costs is erroneous. They cannot be allowed unless they are fixed by law. R. S., ch. 33, sec. 7; ch. 116, sec. 20 ; *Smith* v. *McLaughlin,* 77 Ill. 596.

Appellee has not produced any written consent by Rogers to Vandervoort, authorizing a sale of his, Rogers', interest in the land.

Expert testimony was not admissible as to the genuineness of the handwriting. *Snyder* v. *McKee,* 10 Ill. App. 188; *Penn. Co.* v. *Conlan,* 101 Ill. 93 ; *White* v. *Ballou,* 8 Allen, 408 ; *N. E. Glass Co.* v. *Lovell,* 7 Cush. 321.

It was error to allow Tolman to testify at all as to genuineness of signature by comparison. *Kernin* v. *Hill,* 87 Ill. 209 ; *Melvin* v. *Hodges,* 71 id. 425 ; *Getchell* v. *Ryan,* 24 Ill. App. 372; *Snow* v. *Wiggin,* 19 id. 542.

The Vandervoort heirs were not competent witnesses. *Lowman* v. *Auberoy,* 72 Ill. 619.

Mr. CHARLES E. POPE, for the appellee :

As to the jurisdiction of the court to determine the title to land, see *Gage* v. *DuPuy,* 134 Ill. 132; *Gage* v. *DuPuy,* 127 id. 216 ; *Gage* v. *Caraher,* 125 id. 447 ; *Heacock* v. *Lubuke,* 107 id. 396 ; *Robinson* v. *Ferguson,* 78 id. 538 ; *Bradish* v. *Grant,* 119 id. 606 ; *Gormley* v. *Clark,* 134 U. S. 338.

The proceeding is a chancery one. *Gage* v. *DuPuy,* 127 Ill. 216; *Gormley* v. *Clark,* 134 U. S. 338.

The discretion of the court in awarding costs can not be reviewed, except in cases of abuse. *Otis* v. *Gardner*, 105 Ill. 436 ; *Howe* v. *Hutchinson*, id. 501 ; *Askew* v. *Springer*, 111 id. 662 ; *Sapp* v. *Phelps*, 92 id. 588 ; *Field* v. *Oppenstein*, 98 id. 68 ; *Schultze* v. *Houfes*, 96 id. 335 ; *Ling* v. *King*, 91 id. 571 ; *Converse* v. *Rankin*, 115 id. 398 ; *Gage* v. *Bailey*, id. 646.

As to the interest of the parties to the declaration of trust, see *Morrill* v. *Colehour*, 82 Ill. 618 ; *Nicoll* v. *Ogden*, 29 id. 323 ; *Nicoll* v. *Miller*, 37 id. 389 ; *Nicoll* v. *Todd*, 70 id. 295 ; *Nicoll* v. *Mason*, 54 id. 281 ; *Mauck* v. *Mauck*, id.

Mr. JUSTICE WILKIN delivered the opinion of the Court :

The proof introduced on behalf of the petitioner clearly establishes the fact that the trust in said Vandervoort was correctly stated in the declaration signed by him, at the time of the execution of the deed. The recital in the Day deed, to the effect that he held the title in trust for the benefit of Russell, Trabue and Rogers alone, was therefore untrue, and if the petitioner has succeeded in showing a valid title in himself with that erroneous recital corrected, the decree below is clearly right and must be affirmed.

In support of the allegation in the petition that the deed from said Vandervoort to Charles R. Day was made in pursuance of a sale by said Jason Rogers to the latter of his interest in said land, the petitioner introduced in evidence a letter of which the following is a literal copy.

"MORRISANIA, Sept. 9, 1863.

Mrs. D. Rally, Madam. Yours of the 7th is just received. Mr. Vandervoost purchased 80 acres of land from Mr. Fitzgerald one mile from the city of Chicago when we were in the west. I think he paid about $3080.00 for the 80 acres. I purchased one ⅛ of the above land for $375. I sold my interest in the land to Mr. Charles R. Day of Newark, or Orange,

N. J., for $400. Mr. Vandervoost purchased no other land out west at that time. By addressing a letter to the clerk of county of Cook at Chicarco, Illinois, and he will send you full particulars. I think the land was purchased in September, 1855, any further information I will cheerfully give if required. Yours respectfully, Jason Rogers per Thos. Rogers.

P. S. I do not know the value of the land at the present time. When he bought it was cheep."

This letter was produced by Germain Breant Vandervoort, a son of said Benjamin W. Vandervoort, who testified that he obtained it from Mrs. D. Rally, residing in Paris, France, who is his aunt. He testified: "When I heard that Mr. Pope was going to commence this proceeding, I wrote to my aunt, who resides in Paris, France, asking her whether she had any papers or letters relating to this property of my father, and she sent me, in a short time afterwards, some letters of my father, and this letter which I hold in my hand. This letter is written to Mrs. D. Rally, who, on the death of my father, took out papers of guardianship in reference to my mother's estate, and she wanted to know something about how my father's estate stood. She wrote to a number of parties in reference to it, and this is a letter that she received in answer to a letter written to Mr. Rogers." The only controverted question of fact in the record is the genuineness of this letter. Appellants insist it is a forgery. They introduced as a witness on their behalf Thomas Rogers, one of appellants, a son of Jason Rogers, and the Thomas Rogers who, it is admitted, wrote the letter if it is genuine, and by him attempt to prove that he did not write it. The testimony of the witness Vandervoort, as to how he obtained the letter, and how it came to be written, was not objected to, nor is there any evidence whatever, either in his cross-examination or otherwise, tending to discredit him in that regard, except the evidence of said Thomas Rogers, to the effect that he did not write the letter.

Counsel for the appellee contend that the decree of the court below should be affirmed, without reference to this letter, on the ground that, by the facts proved in regard to the trust in Vandervoort in favor of Rogers, the latter's interest in said eighty acres of land was not in the realty, but in the proceeds thereof, as personalty. In support of this contention it is insisted the case is like that of *Morrill* v. *Colehour*, 82 Ill. 618, and the *Nicoll* dower cases reported in 29 id. 323 ; 37 id. 284; 70 id. 295, and 49 id. 358. We do not think this position tenable. The case made by the petition is wholly unlike the cases cited. The agreement under which it is alleged the purchase from Fitzsimmons was made, the declaration of trust by Vandervoort, and the agreement signed by Russell, Trabue and Rogers to pay their proportionate part of the purchase money, all show that the land was not purchased with partnership money for partnership purposes, or held by Vandervoort as such, but that each of the four parties paid a proportionate part of the purchase money, and were to have an undivided interest in the land to be conveyed to them by Vandervoort if they requested it.

It may be, if Vandervoort had sold the entire purchase, Rogers, under the latter clause of the declaration of trust, could only have claimed one-eighth or one-quarter of the proceeds, but certainly, under that clause, the trustee had no power to divide the land and sell what he might consider one-eighth or one-quarter of it, and require Rogers to accept the proceeds in satisfaction of his interest in the whole tract. He could do that only with the consent of Rogers, the *cestui que trust*, and that is clearly the theory of this petition. The question then recurs, was the court below justified by the evidence in finding that the conveyance to Day was made at the instance and request of Jason Rogers ; and both parties concede that this question turns upon the genuineness of the Rally letter.

Julian Watkins Vandervoort, another son of Benjamin W. Vandervoort, testified on behalf of the petitioner to a conversation with Thomas Rogers at the Palmer House in Chicago, after this suit was brought, and says, " I asked Mr. Rogers if he recollected writing that letter. He said, ' Well, it is so many years back that it is too long for me to remember, but it is very likely. I may have written a letter, as at that time I was my father's secretary, and wrote his letters.' His father at that time was either in bad health or infirm." He also says Mr. Rogers expressed a desire at that time to see the letter, and that he telegraphed his brother at Kansas City to bring it on to Chicago, but before the brother arrived, Rogers had left the city. We do not think it can be seriously questioned that the evidence on behalf of petitioner, *prima facie*, proves that Thomas Rogers wrote the letter. Testifying in his own behalf, in his examination in chief, he at no time positively denies that fact. When asked by his counsel, " Did you, or did you not, sign that letter ' Jason Rogers, per Thos. Rogers ? ' " He answered, " I never signed a letter ' Jason Rogers, per Thos. Rogers.' " Again, he says, " I never signed my name Thos. Rogers, but Thomas Rogers."

To the interrogatory, " Please look again at that signature, and say whether or not it is your signature," he answers, " I never remember signing my name Thos. Rogers." To the direct question, " Did you sign that letter marked Exhibit 9 ? " he replied, " To the best of my knowledge, I did not." Manifestly, that which raises the belief in the mind of the witness, that he did not write the letter, is the fact, that his name is written Thos. instead of Thomas, as he was in the habit of writing it. He does not deny that the writing is similar to his. He does not say, from recollection, that he did not write letters, about that time, for his father. In another part of his evidence he admits that the writing is like his, and while he denies that he told the witness Vandervoort, that he was in the habit of writing letters for his father, or was his secretary,

he admits that he may have written one or two letters for him, and does not say this may not be one of them. He was at his father's house at Morrisania, the date of the letter. On cross-examination he gives, as an additional reason for the belief that he did not write the body of the letter, the misspelling of the word Chicago, and spelling it in different ways in the same letter. Nothing can justly be said against the fairness and candor of Mr. Rogers as a witness. His answers appear to be frank and candid, but it is clear, from the whole of his testimony, that he is in doubt as to whether or not he wrote this letter, and from certain features of it, not consistent with his habit, and what he now thinks he would have done had he written it, his belief is, that he did not write it.

He was asked, on the cross-examination, to reproduce the letter in his handwriting by sentences, which he did. He also in his examination in chief produced two of his signatures, written about the date of the letter, which, he swears, are his genuine signature of that period, and which he took from books belonging to him, in which he had written his name, for the purpose of showing that they belonged to him. One Henry L. Tolman was introduced by the petitioner as a microscopical expert, and testified that, in his opinion, the signature of Thomas Rogers to his deposition filed in the case, and the signature, Thos. Rogers, to the Rally letter, were written by one and the same person. Also that the letter and the reproduction of it, on cross-examination, were written by one and the same person. He also gave it as his opinion that the two signatures taken from books by Mr. Rogers, were not written by the same person who signed the deposition and reproduced the letter, though he says there is some resemblance in the writing. He gives his reasons at length for the opinion that the letter and signature were written by the same hand which signed the deposition, and re-wrote the letter, and some of them, at least, give force to that opinion. The original "Rally letter" by agreement of parties is attached to the record for

our inspection. Also the two book signatures above referred to. The letter itself has all the appearances of having been written about the time of its date. We are unable to discover anything in it calculated to cast suspicion upon its genuineness. It is said Rogers would not have used the names Vandervoost and Fitzgerald, for Vandervoort and Fitzsimmons. It may be replied, neither would one forging such a letter. There are certainly many features of resemblance between the handwriting in the letter, and the reproduction of it by Mr. Rogers. The marked difference between the book signatures, and that to the " Rally letter," and to the reproduced sentences of it is, that those taken from the books are much smoother, and seemingly done with a better trained hand. In other words, those taken from the books are by far the better written. This difference can be accounted for, in part at least, by the fact that they were in all probability written with more care. However that may be, we are of the opinion that the weight of the evidence is in favor of the finding of the Circuit Court as to the genuineness of that letter.

There is no force in the objection that the Vandervoorts were incompetent to testify against appellants on account of interest. Even if it had appeared that they were interested in the event of the suit, they testified to no fact occurring prior to the death of Jason Rogers, and as to subsequent events and transactions they were clearly competent.

It is also objected that the expert testimony of the witness Tolman was incompetent. Singularly, this objection is based in part upon the declaration of counsel, that " the similarity between the writing in the Rally letter, and Mr. Rogers' mature handwriting, shown by the reproduction, is so marked that it simply needed a person not blind to notice it." Therefore it is said " the rule that, where men of ordinary intelligence can judge, expert testimony will not be received," should have been applied. Citing *Pennsylvania Co.* v. *Conlan,* 101 Ill. 93, and similar cases. It was held in the *Pennsylvania Co.*

case that, "as to matters which do not so far partake of the nature of a science as to require a course of previous habit, or study, in order to an attainment of a knowledge of them, the opinions of witnesses, though experts, are not admissible." Certainly that rule has no application when the genuineness of writings and signatures is in issue. Whether two instruments were written by the same person, or whether signatures are the same is clearly the subject of expert testimony. It will not be pretended that appellants would not have had the right to offer expert testimony to prove that, notwithstanding the similarity of the writings, they were written by different hands. The question to Tolman was not whether the two writings resembled each other, but whether, in his opinion, the same person wrote both. But, it is said, admitting his testimony, over the objection of appellants, was violative of the rule, "that the genuineness of handwriting can not be proved or disproved by comparison." The general rule in this and other States of the Union is doubtless as above stated, but wherever that rule prevails, there is also the exception, that if the instrument to be used as a standard is properly in evidence in the case, for other purposes, then the signature, or paper in question, may be compared with it by the jury. To this effect is *Brobston* v. *Cahill*, 64 Ill. 356. Where other writings, admitted to be genuine, are already in the case, comparison may be made by the jury, with or without the aid of experts. 1 Greenleaf on Ev., sec. 578.

We do not deem it important to inquire how far the *laches* of Jason Rogers and his representatives, the appellants, should estop them from now claiming title to the premises in question. The fact that he, during his lifetime, made no claim to the premises, and left his executors in ignorance of any claim of title thereto, so that, until the filing of this petition, they were wholly ignorant of the fact that he ever owned it, are circumstances strongly corroborative of the statements made in the "Rally letter."

The further point is suggested that the sale could only be made by Vandervoort, so as to bind Jason Rogers, by the written consent of the latter, and, therefore, the decree below is erroneous, there being no proof of such written consent. No authority is cited in support of the proposition, and we find none. We know of no reason why his consent might not be shown by circumstances or parol proof, as well as by writing. The statute of frauds has no application to the case. If, as stated in the Rally letter, Jason Rogers sold his interest in the trust property to Day, to whom the proof shows the trustee conveyed, it would be most unreasonable and unjust to allow him or his executors to now repudiate that sale and conveyance because his consent was not given in a particular manner.

It is also insisted the court below erred in adjudging all the costs against appellants. It is contended, first, that there is no authority of law for taxing costs against a defendant in such a proceeding. That a proceeding under the "Burnt Records act" to establish title is a proceeding in chancery, is settled by the decisions of this court. *Gage* v. *DuPuy,* 127 Ill. 216 ; *Same* v. *Same,* 134 id. 132.

By section 18, ch. 33, R. S., entitled "Costs," it is provided that " in all cases in chancery, not otherwise directed by law, except where the bill is dismissed by the complainant, or for want of prosecution, it shall be in the discretion of the court to award costs or not." The awarding of costs in a court of chancery is a matter of discretion with the court. *Frisby et al.* v. *Ballance et al.,* 4 Scam. 287. It is also well settled that the exercise of that discretion will not be reviewed, except for abuse. The litigation in this case was caused by the appellants interposing a claim to the premises in question, which the court below deemed to be unfounded, and as we have seen, that decree was justified by the evidence. It can not, therefore, be seriously contended that the court below abused its discretionary power in ordering them to pay the costs.

It is again insisted that under section 20 of the "Burnt Records act," the court should have limited the costs to "two-thirds of the ordinary costs at law." This is a clear misapprehension of the scope of that section. It does not make it the duty of the court to limit the costs, but simply fixes the *maximum* fees which "officers and employees" may charge, or be allowed for services rendered in proceedings under that act. If costs have been taxed in violation of the section, the remedy of appellants is by motion in the court below to retax the same.

We find no reversible error in this record, and the decree of the Circuit Court will be affirmed.

*Decree affirmed.*