BENTON REYNOLDS, Appellant, *vs.* ANNA WETZLER,
Appellee.

*Opinion filed June 21, 1912.*

1. SPECIFIC PERFORMANCE—*oral testimony as to contract must
be clear and explicit.*  A court of equity will not decree the specific
performance of a contract which depends upon oral testimony for
its existence unless the proof is clear and explicit that such con-
tract was made, and the contract itself must be certain and all of
its terms be clearly proven.

2. SAME—*when Statute of Frauds is a defense.*  In the absence
of any question of estoppel the Statute of Frauds is a good defense
to a suit to specifically enforce a contract made by an agent to
sell land, where the agent had no written authority to make it.

3. SAME—*when party cannot invoke the doctrine of estoppel.*
Where a contract, made by an agent, to sell land is repudiated by
the owner before the proposed purchaser has changed his position
in any way to his detriment, the latter is not in a position to
claim that the owner is estopped, by reason of something occur-
ring after the contract had been repudiated, to raise the defense
of the Statute of Frauds upon the ground that the agent had no
written authority to make the contract.

APPEAL from the Circuit Court of Rock Island county;
the Hon. WILLIAM H. GEST, Judge, presiding.

WILLIAM C. ALLEN, and ROBERT R. REYNOLDS, for ap-
pellant.

SEARLE & MARSHALL, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Benton Reynolds, appellant, filed a bill in the circuit
court of Rock Island county against Anna Wetzler for the
specific performance of a contract for the sale of a farm
located in Rock Island county.  The contract sought to be
enforced is alleged to have been entered into between the
parties by correspondence and telegraph.  Upon a hearing
in the circuit court the bill was dismissed for want of

equity, and the complainant below has removed the record to this court for review by appeal.

In October, 1909, appellee was the owner of a farm of two hundred acres in Rock Island county. She resided in Peoria. About the 5th of October she went to Colorado and was absent from the State until the end of the month. Before going to Colorado she told her brother, Samuel Schumacher, and her son, Samuel, that she had decided to sell the Rock Island farm and asked them to try to find a buyer at $80 per acre. Appellant claims to have made a contract in writing with Schumacher for the purchase of the farm. To this claim the appellee sets up two defenses: First, that Schumacher had no authority in writing to sell the farm; and second, he made no contract in writing with appellant for the sale. If either of these defenses is sustained it follows that the decree below is right and must be affirmed.

Assuming, for the sake of argument, that Schumacher was duly authorized to enter into a binding contract for the sale of the farm of appellee, the burden of proving the making of such contract, by evidence that is clear and convincing, rests upon appellant. Appellant claims that an unconditional offer to sell him the farm at $80 per acre was submitted to him by Schumacher in a letter dated October 14, 1909, and which was accepted by appellant by a telegram on October 16. The letter supposed to contain the proposition was not offered in evidence. An attempt to account for its loss was made and secondary proof of its contents submitted. This proof consisted of the statements of appellant and his agent, William Peppers, corroborated by an envelope addressed to the appellant by Schumacher which was stamped October 14 on the face and October 15 on the back, indicating that the letter had been posted on the 14th of October and received at the place of delivery on the 15th. Appellant, in attempting to give the contents of this letter, said that he thought he remembered the sub-

stance of the contents or some of it. He was asked to state the contents of the letter, and answered: "Well, it was this way: he understood me to make a cash offer of $80 per acre.

Q. "Who understood you?

A. "Mr. Schumacher.

Q. "Was the letter written or addressed to any particular person?

A. "That was the price, $80 per acre, if I would make it a cash deal. I could have the farm by making a deposit,—I believe that was in the letter, too,—of $500 in the Muscatine bank. That was about the substance of the letter.

Q. "If you can recall anything further contained in the letter referred to, please so state,—something about the money that was to be paid March 1.

A. "There was to be paid $500 down, the balance on March 1. I cannot recall anything further at the present time. No, I think I have stated it all."

Peppers testifies that appellant gave the letter referred to, to him, and that he read it; that the letter had been lost in some way but the envelope was preserved. When asked as to the contents of the lost letter he said he thought he remembered it in substance, and when asked to state the contents said: "The letter read like this: That he could have his sister's farm at $80 per acre, with $500 deposited at the present time and the balance paid on March 1, 1910.

Q. "Just state the way the letter read, as near as you can, with reference to the $500.

A. "To deposit in some bank.

Q. "Where, if you remember?

A. "I think it said in Muscatine. The letter was directed to Benton Reynolds and was written by Mr. Schumacher. I don't know where it was mailed. I saw the letter October 16."

254—39

Upon cross-examination Peppers was asked whether he could remember the language of ,the letter, and he said that he did not know that he could tell, as it had been so long ago,—over two years. He was then asked whether he had any memory of the substance of that letter, and he said, "I could not swear to it just what was in that letter." He was asked whether it had gone from memory, and he said: "To a certain extent; I could not tell you what was in that letter; I mean that I don't remember just what was in the letter."

This was all the evidence introduced by appellant tending to prove the contents of the lost letter. Schumacher testified that he never wrote appellant but one letter in regard to this farm. That letter is in the record and was dated at Eureka, Illinois, October 12, 1909. The letter, omitting the address and signature, is as follows:

"I received a letter from Miss Kate Wetzler stating that you send her a message in regard of that farm. I expect she told you that her mother will not be home for a few weeks, so she asked me to write to you about the price. Her mother told me before she left not to sell the farm for less than $80 per acre and most of it cash down. I would of wrote to you before this, but Sam Wetzler told me that you had given up to buy the place, although I am glad to see you come in, for there are several men after the farm now. Hoping to hear from you again, yours truly."

This letter was offered in evidence but no envelope corresponding with the date thereof was introduced. Schumacher testifies that the above is the only letter that he ever wrote to Reynolds in regard to this transaction. He admits that the envelope stamped October 14 is in his handwriting, but says he must have made a mistake in dating the letter or else held it after it was written and did not mail it until the 14th. Subsequent correspondence between Schumacher and Peppers makes no reference to a letter dated on the 14th. The evidence as to the existence

of the letter supposed to have been written on the 14th is very unsatisfactory. Taking all of the evidence bearing upon the question into consideration, it leaves a grave doubt as to the existence of any letter other than that dated October 12. If another letter was written the proof of its contents is not at all clear and satisfactory. Appellant's entire case depends upon the contents of the letter supposed to have been written on the 14th of October. The law is well settled that a court of equity will not decree the specific performance of a contract, the existence of which depends upon parol testimony, unless the proof is clear and conclusive of its existence and terms. In such case the evidence must be clear and explicit, leaving no room for reasonable doubt, and the contract must be certain and all of its terms clearly proven. (*Wallace* v. *Rappleye,* 103 Ill. 229; *Folsom* v. *Harr,* 218 id. 369; *Chicago and Eastern Illinois Railroad Co.* v. *Chipps,* 226 id. 584; *White* v. *White,* 241 id. 551.) The evidence in this case as to the existence of a contract is not of that clear and convincing character required by the rule of law established in the foregoing authorities.

The Statute of Frauds was interposed as a defense. The proof of Schumacher's authority to make a binding contract of sale was not in writing, as required by the statute. Appellant's case fails, therefore, for this reason. Appellant seeks to avoid this defense by invoking an estoppel against appellee. The alleged estoppel is based upon a letter written by the appellee in which she said that Schumacher was the man to sell the farm. Appellant claims that after he saw this letter he sold eighty acres of land to raise the money to pay for the land in question and for that reason he has been misled to his injury, and that it would be a fraud upon him to permit the appellee to insist upon the Statute of Frauds. In answer to this it may be replied that appellant did not sell his eighty acres of land, or otherwise change his position to his detriment, until long

after his alleged contract with Schumacher had been repudiated by appellee and the land in question sold to another party. He is in no position to invoke the doctrine of estoppel.

The decree dismissing the bill for want of equity is affirmed.

*Decree affirmed.*