GEORGE C. MITCHELL, Appellant, *vs.* THE ART INSTITUTE OF CHICAGO, Appellee.

*Opinion filed October 27, 1915.*

1. PRINCIPAL AND AGENT—*an agent verbally authorized to find purchasers cannot make binding contract to sell land.* An agent must be authorized in writing before he can make a binding contract for the sale of land of his principal, even though his performance of a verbal contract to find purchasers may entitle him to commissions.

2. SPECIFIC PERFORMANCE—*when Statute of Frauds is a good defense.* In the absence of any question of estoppel the Statute of Frauds is a good defense to a suit to specifically enforce a written contract for the sale of land executed by an agent having no written authority from the owner.

3. APPEALS AND ERRORS—*when costs cannot be complained of on appeal.* The awarding of costs for the taking of evidence before the master is within the discretion of the trial court, and that discretion will not be reviewed except for abuse, but the question is not preserved for review if no motion to re-tax costs is made in the court below.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

GEORGE C. MITCHELL, *pro se,* (MORTON T. CULVER, of counsel,) for appellant.

MILLER, STARR, PACKARD & PECKHAM, (CECIL BARNES, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant, George C. Mitchell, complainant in the court below, filed a bill in chancery in the circuit court of Cook county against the Art Institute of Chicago, a corporation, appellee in this court, to compel the specific performance of a contract for the sale of certain lots in Grant's addition to Evanston, owned by appellee, which contract had been executed by appellant as purchaser and by Walter M. Mitchell, brother of appellant, as agent for appellee, on

January 27, 1914. Appellee answered, denying that it had
entered into any written agreement with the complainant
for the sale of the lots in question; denying that Walter
Mitchell was its authorized agent, or that he ever had any
written authority, or any authority whatsoever, to sign or
agree to any contract for the conveyance of said lots on
behalf of appellee, and denying any knowledge of the terms
of the contract save as it was informed by said bill. It
was also set up in the answer that on January 27, 1914,
the Art Institute was under contract to convey a portion
of said real estate to parties other than appellant, and that
before it had any knowledge of the contract of appellant
it had conveyed, or contracted to convey, to parties other
than appellant, all the real estate mentioned in the bill of
complaint.

A general replication was filed to the answer and the
cause was referred to a master in chancery to take the
proofs. Evidence was heard, and thereafter the master re-
ported, finding, among other things, that on January 27,
1914, and prior thereto, appellee, the Art Institute of Chi-
cago, was the owner of the real estate in controversy; that
said Art Institute did not at any time designate or appoint
in writing said Walter M. Mitchell as its agent to sell said
property, or at any time in writing empower or authorize
him to sign or affix its name to any writing for or in its
behalf; that he was not authorized or empowered by any
writing to make, execute or sign, as agent of the Art In-
stitute, the contract in writing entered into by said George
C. Mitchell and sought to be specifically enforced; that
the consideration set forth in the contract, being $6600,
nor any part thereof, had been tendered by the said George
C. Mitchell, or anyone for him, to the Art Institute, and
that the latter had not received said amount or any part
thereof; that said George C. Mitchell had not at any time
been in possession of said real estate nor anyone for him,
and neither he nor anyone for him had made, or caused to

be made, on said real estate, or any part thereof, any last-ing or valuable improvements. The report found the equi-ties with the defendant, the Art Institute, and recommended that the bill of complaint be dismissed for want of equity.

Objections were filed to the master's report; that the findings of the master were contrary to the law and the evidence; that it was immaterial whether or not Walter M. Mitchell had any authority in writing from appellee to make the contract he did, or whether the complainant in the bill had paid or tendered any part of the consideration provided in the contract for the lots or taken possession thereof or made improvements thereon, for the reason that the Art Institute had made an agreement with Walter M. Mitchell that he was to sell the lots in question and other lots, and that he had sold for said Art Institute certain other lots, and said agreement was therefore in part con-summated. The objections were overruled, and exceptions to the master's report of the same nature as the objections were then filed, which, on a hearing, were overruled by the chancellor and a decree was entered dismissing the bill of complaint for want of equity. Appellant has appealed to this court, and assigns as error that the decree of the trial court was contrary to the law and the evidence, and that the trial court erred in overruling the exceptions to the master's report.

It appears from the evidence that appellee, the Art In-stitute, was the owner not only of the lots in controversy but of several other lots in the same vicinity, and that Wal-ter M. Mitchell, who was a real estate dealer, had at dif-ferent times prior to the transaction in question negotiated sales of certain lots other than those involved in this suit at a price agreed upon, and the Art Institute had conveyed such lots or entered into contracts to convey with the pur-chasers produced by said Mitchell and he was paid a com-mission for effecting such sales. The officers of the Art Institute always refused, however, to give any written op-

tions to Mitchell or do any more than accept such purchasers as he procured.  Early in January, 1914, Mitchell applied to the officers of the Art Institute and requested that he be given the agency to dispose of the lots remaining unsold in Grant's addition.  Pursuant to whatever arrangement was then made he did effect sales of certain lots.  There is a sharp conflict in the evidence as to whether Mitchell, as claimed by him, was given the exclusive agency to sell the remaining lots, including the lots in controversy, or whether the Art Institute, as its secretary and another witness testified, had the right to sell through other agents as well.  The contract sought to be enforced recited that it was an agreement by George C. Mitchell to purchase the premises in controversy, and that Walter M. Mitchell, as agent, agrees to sell and convey the lots.  It was signed, "George C. Mitchell," and "Walter M. Mitchell, Agent." The name of the owner of the property, the Art Institute of Chicago, nowhere appears in the contract.

The principal question is whether the contract in question is contrary to the Statute of Frauds.  If so, it cannot be enforced.

While it may be true, as claimed by the appellant, that the appellee, through its officers, had verbally agreed to sell and convey the real estate in question to such purchaser or purchasers as might be found by Walter M. Mitchell, and while such verbal contract might be the basis of a suit by Mitchell for his commissions in case he found purchasers who were willing and able to buy the property on the terms proposed, such verbal agreement, alone, there being no authority in writing from the owner to the agent to make a contract, is not sufficient upon which to base a suit for specific performance of a contract entered into by the agent to sell the property.  An agent for the sale of real estate has no authority to bind the owner thereof by entering into a contract for the sale of such real estate unless the agent has been lawfully authorized in writing so

to do. (Hurd's Stat. 1913, chap. 59, sec. 2; *Hughes* v. *Carne*, 135 Ill. 519.) In the absence of any question of estoppel the Statute of Frauds is a good defense to a suit to specifically enforce a contract made by an agent to sell land where the agent had no written authority to make it. (*Reynolds* v. *Wetzler*, 254 Ill. 607; *Kesner* v. *Miesch*, 204 id. 320.) In the case at bar it is not claimed that there was any ratification by the appellee, nor payment or taking possession of the property or making of improvements by appellant, that would take the case out of the Statute of Frauds. Part of the purchase money was paid by appellant to the agent who signed the contract without authority, but no part of it was paid or tendered to appellee.

Appellant claims that the Art Institute, through its officers, contracted with Walter M. Mitchell to dispose of all its lots in the vicinity of the lots in question to such purchasers as he might produce; that Mitchell did produce purchasers for certain of the lots, and that this was sufficient part performance of the contract to take the contract out of the Statute of Frauds. As stated above, there is a conflict in the evidence as to the terms of the agreement made between appellee and Walter M. Mitchell as to producing purchasers for the lots in Grant's addition, and in any event a court of equity will not decree the specific performance of a contract the existence of which depends upon parol testimony, unless the proof is clear and conclusive of its existence and terms. (*Reynolds* v. *Wetzler, supra,* and cases cited.) The contract sought to be enforced was clearly contrary to the Statute of Frauds and appellant was not entitled to have it specifically enforced.

Complaint is made in the argument of appellant as to certain costs made by appellee in taking evidence before the master, which evidence is claimed to be irrelevant to the issues involved. The evidence in question was that appellee had sold the real estate in question through another agent prior to the date of the contract made by Walter

M. Mitchell, as agent. The awarding of costs was within the discretion of the trial court. (Hurd's Stat. 1913, chap. 33, sec. 18.) The exercise of that discretion will not be reviewed except for abuse. (*Rogers* v. *Tyley,* 144 Ill. 652.) No motion was made to re-tax costs, and consequently no ruling made that has been preserved for our consideration. We are unable to say that the awarding of costs against the complainant on the dismissal of his bill was an abuse of discretion.

We think the decree of the circuit court was right, and it will be affirmed.

*Decree affirmed.*