**ASHBY v. STANDARD PIPE & SUPPLY CO.**

No. 4237.

Court of Civil Appeals of Texas. Texarkana.

Dec. 22, 1932.

Rehearing Denied Jan. 5, 1933.

Goggans & Ritchie, of Dallas, and W. M. Futch, of Henderson, for appellant.

Brachfield & Wolfe, of Henderson, W. E. Fitzgerald, of Wichita Falls, and Sullivan & Wilson, of Dallas, for appellees.

LEVY, J. (after stating the case as above).

The pertinent point for review is the ruling complained of in the giving of the peremptory instruction to the jury to return a verdict against the plaintiff. It is believed the giving of the peremptory instruction to the jury is not open to the objection of being erroneous and legally unwarranted under the evidence. The subject-matter before the court was a controversy relating purely to a trust, and the evidence bearing thereon was without conflict in the controlling points of the case. The trial court has made the correct disposition of the case in its several phases as to all the parties.

B. H. Ashby on March 17, 1930, bought from C. M. Joiner, trustee, the several oil royalties in suit as his individual property and for his own benefit, and paid the full purchase price in cash out of his own money. The check given by B. H. Ashby was dated March 17, 1930, and made payable to the order of C. M. Joiner in the sum of $1,145, and drawn on the Mercantile Bank & Trust

Company in Dallas. Although a memorandum appeared on the margin of the check reading "Royalty to Okla.-Tex Royalty Corporation," yet the memorandum was placed there, as is clearly inferable, for the convenience of Mr. Ashby to preserve the information for his benefit. The memorandum has no other effect. While it appeared that B. H. Ashby and M. M. Miller officed together and were each engaged in the same common business of buying oil royalties, still they were "not partners," as M. M. Miller admits, and this particular purchase was for the sole and exclusive property of B. H. Ashby. The conveyances of the oil royalties so purchased were thereafter on March 20, 1930, at the instance of B. H. Ashby made by C. M. Joiner, trustee, in the name of the Okla-Tex Royalty Corporation. B. H. Ashby himself had and directed C. M. Joiner, trustee, to make the conveyances of the oil royalties in the name of the royalty corporation instead of in his own purely as a matter of convenience. As shown by the evidence of M. M. Miller, the conveyances of the oil royalties were directed to be made in the name of the royalty corporation in order "that they might be handled by the Corporation" in the event B. H. Ashby should be taken sick or be incapacitated to attend to business. The evidence conclusively negatives even any reasonable inference that the royalty corporation paid any part of the purchase money or that the money paid by Mr. Ashby was intended as an advancement or loan payable to it in stock. The royalty corporation had no funds and had not issued stock, and had not up to this time obtained any permit to do business in Texas. The royalty corporation was merely in existence as such, and was not at the time undertaking to commence the business for which it was created. It may be regarded, however, as a corporation of sufficient existence to merely hold the legal title of the oil royalties, although not at the time buying the royalties for its own business purposes, for there was proof of corporate meetings and the election of officers. The acceptance of a charter by the corporation arises from merely acting under it. 1 Cook on Corp. (6th Ed.) § 2a, p. 9. M. M. Miller testified, and his evidence is without conflict, that he told Mr. Jaffe and "every one that it (the royalties) was Mr. B. H. Ashby's." There is no pretense in the evidence that either the royalty corporation or M. M. Miller was claiming any interest or right in such oil royalties. In these facts stated the appellant's contention must be sustained that a trust was established to exist in the oil royalties. A trust results, as a matter of pure law, in favor of B. H. Ashby as to the oil royalties, since he supplied the purchase money and intended the purchase for his own benefit and not for the benefit of the royalty corporation. Implied trusts are deducible from the nature of the transaction as matters of intent. 39 Cyc. pp. 25, 26. Whenever the purchase money for an estate in realty is paid by one person and the conveyance is to another, the legal presumption arises of an implied trust, ordinarily termed a resulting trust, in favor of him who pays the purchase money. 3 Pomeroy Eq. Jur. (4th Ed.) § 1, p. 1037; 39 Cyc. pp. 26–27; O'Connor v. Vineyard, 91 Tex. 488, 44 S. W. 485, quoting from Perry on Trusts. The principle on which the rule is based is that the beneficial estate follows the consideration and attaches to the person from whom it comes.

In the view of a trust being established to exist and arising in the conveyances to the royalty corporation on March 20, 1930, Was the sale and conveyance of the oil royalties in August, 1930, by the trustee, the Okla-Tex Royalty Corporation, valid? In August, 1930, the royalty corporation conveyed a portion of the oil royalties to C. M. Joiner, trustee, and the entire remainder to the Standard Pipe & Supply Company. The sale and conveyance in both instances was under circumstances showing the existence of good faith and honesty in all matters, and nothing whatsoever adversary in conduct by the trustee or the agent acting for the trustee corporation. There was no production of oil or indications of its find at the time of the sale, and the price obtained for the royalties was the value thereof. It was duly and fully accounted for. The conveyance to C. M. Joiner, trustee, was in the nature of a reconveyance to him to cancel the original conveyance of an excess portion of the royalty. It was intended to restore to C. M. Joiner, trustee, the excess which was never in fact sold to B. H. Ashby and which B. H. Ashby was under obligation to reconvey or have reconveyed to Mr. Joiner. B. H. Ashby, as reflected by the minutes of the royalty corporation, fully recognized the error in quantity conveyed to him and assented to its reconveyance to C. M. Joiner, trustee. The conveyance, though, to Standard Pipe & Supply Company, of date August 1, 1930, was that of bargain and sale for the sum of $1,145 paid in cash, being the exact amount paid to C. M. Joiner, trustee, by B. H. Ashby on March 17, 1930. Each of the two conveyances, as made by the trustee, was in the name of the royalty corporation by M. M. Miller, but the authority of the royalty corporation to act through M. M. Miller may be held to have been sufficiently proven. M. M. Miller was the vice president of the corporation and was formally authorized by the board of directors by resolution of record to act generally for the corporation in the execution of documents. The manifest intention of the directors was to confer the authority generally of agents upon M. M. Miller and B. H. Ashby severally, or jointly and severally. And in the special situation proven, the execution of the conveyances by

the royalty corporation by M. M. Miller was such execution as will be legally sufficient to conclude the royalty corporation. Neither one of such sales mentioned as made by the royalty corporation may be said to be in anywise contrary to the directions contained in the instrument of trust, for there were no duties imposed nor restrictions or directions whatever in the instrument of trust, which was the conveyances of March 17, 1930.

 Ordinarily, in the absence of express authority conferred by the instrument creating the trust, and in the absence of the voluntary consent of the beneficiary, a trustee has no power to sell and convey the corpus of the trust property. Brown v. Harris, 7 Tex. Civ. App. 664, 27 S. W. 45; 39 Cyc. p. 346. But this rule is subject to qualifications, as other and peculiar circumstances may authorize or make necessary. And in this case it is apparent from the testimony that B. H. Ashby intended that these oil royalties should be sold by the royalty corporation. They were placed in the name of the corporation in the sole purpose "that they might be handled by the Corporation"; that is, disposed of by sale when necessary or in the discretion of the corporation in case B. H. Ashby got sick or physically incapacitated. In implied trusts, as here, there is no element of permanency. Thus in the circumstances shown a power of sale of the trust property can and may be implied. Montgomery v. Truehart (Tex. Civ. App.) 146 S. W. 284. Therefore there may not be predicated invalidity of the sale upon the absence of an order of sale or the trustee not first obtaining an order of sale or consent for sale from the probate court of Dallas county. Trust estates may be subject to courts of chancery, but probate courts have no jurisdiction. Dingman v. Beall, 213 Ill. 238, 72 N. E. 729; 39 Cyc. p. 593. The discretionary power of sale resting in the trustee, the authority of the probate court was not in anywise necessary to effectuate the sale by the trustee. If the sale was valid as to the trustee, it must necessarily follow that the sale passed title to the purchaser and he was entitled to a conveyance from the trustee.

 There is sufficiency of consent and approval of Mrs. Ashby to the sale and conveyance by the trustee to conclude the beneficiaries. Before the sale Mrs. Ashby was notified of the intention of the trustee to make the sale, and after the sale and conveyance she indorsed the check, and the money was paid to her thereon and was deposited in the estate. Her reception of the proceeds of the sale and her express recognition of the trusteeship of the Okla-Tex Royalty Corporation and its authority to make sale would authorize the conclusive presumption and imputation of assent to, and approval of, the sale and conveyance. One who holds an equitable interest in land is bound by a sale of such land by the trustee at his request, even though such request be not in writing. Although it be that in the first instance the husband has the exclusive management and control of the community, as this trust estate was shown to be, yet the husband was in this case duly and in all things legally adjudicated insane, and by reason thereof was incapacitated from performing this duty towards the community. Appellant as guardian took over and was then empowered to exercise that right. Article 4164, R. S.; Speer on Marital Rights (3d Ed.) § 80, p. 96. In virtue of that right, and as a necessary incident to such control of the community, she had the legal right to receive the proceeds of sale of the oil royalties and to assent to and approve the sale and conveyance by the trustee. Prior action of the probate court expressly conferring authority upon Mrs. Ashby to give such assent and approval to the sale by the trustee was not essential to infuse vitality into the sale and conveyance by the trustee.

The judgment is affirmed.