Harris Trust and Savings Bank, as Executor Under Last Will and Testament of Paul C. Boomer, Deceased, Plaintiff, and Rani Pursell, Plaintiff-Appellant, v. First National Bank of Chicago, as Trustee, et al., Appellees, and Northwestern University, Defendant-Appellant.

Gen. No. 46,800.

First District, First Division.

June 21, 1956.

Released for publication September 12, 1956.

Harold J. Clark of Chicago, for Northwestern University, defendant-appellant; John J. Yowell, of Chicago, for Rani Pursell, plaintiff-appellant.

C. Lysle Smith, of Chicago, for First National Bank of Chicago, defendant-appellee; John R. Heath, William Burry, and George R. Hooper, all of Chicago, for Home for Destitute Crippled Children, defendant-appellee.

JUDGE BURKE delivered the opinion of the court.

On August 27, 1924, Paul Chamberlain Boomer executed and delivered a written instrument setting up a trust. On September 28, 1924, the three trustees accepted the trust. In Home for Destitute Crippled Children v. Boomer, 308 Ill. App. 170, we affirmed a decree finding that the trust was valid and compelling Boomer to deliver to the trustees the stock certificates which constituted the trust. In 1941 the First National Bank of Chicago became the sole trustee. The trust instrument directed the trustee to pay the net income from the trust fund to the settlor during his life and upon his death, leaving his wife Laura K. Boomer surviving him, to pay out of the net income $5,000 per year to her during her life or until she shall remarry. Then, following spendthrift provisions, it was provided that if Laura Boomer survived the settlor, upon her death or remarriage, the whole principal of

95

the trust estate and all accumulated and undistributed net income thereof should forthwith be distributed and paid by the trustee to The Home for Destitute Crippled Children, and that if at the time provided for the said distribution the Home shall not be in existence or shall have abandoned the operation and maintenance of a home for destitute crippled children, the trustee should pay and distribute the whole principal and accumulated and undistributed net income thereof to Chicago Home for Convalescent Women and Children, and if said home shall not be in existence or shall have abandoned the operation and maintenance of a home for convalescent women and children, the trustee is directed to distribute the whole principal and all accumulated undistributed net income thereof to such charitable, educational or scientific institutes or institutions then in the City of Chicago as the trustee may select.

The third paragraph of the will of the settlor dated June 10, 1952, bequeaths "during the remainder of the lifetime of my said wife, any income in excess of $5,000 per year from the trust created by me dated August 27, 1924, to my daughter, Mrs. Rani Pursell." In the fifth paragraph, after referring to the provisions of the trust agreement, the will states that "at the date of the making of this will said Home for Destitute Crippled Children has abandoned the operation and maintenance of a home for destitute crippled children, is not operating or maintaining such a home, but is being operated and controlled by another institution for the maintenance of a pay hospital rather than a home, and for persons of all ages, whether destitute or not or whether crippled or not. Said Chicago Home for Convalescent Women and Children is no longer in existence," and ends by directing his executor to see "that said trust fund shall be distributed to said Students Finance Department of Northwestern University, either by the election of said trustee, or pursuant to

this provision of this, my will." The settlor died on February 4, 1954. His will was admitted to probate and letters testamentary issued to Harris Trust and Savings Bank, executor. Mrs. Rani Pursell is the daughter and only child of the settlor. Laura Boomer is her stepmother.

Rani Pursell, joined by the executor of his will, sued the trustee of the inter vivos trust established in 1924, and the Home for Destitute Crippled Children, hereinafter called the Home, for an adjudication of plaintiff's right as heir of the settlor and legatee under his will, to the income from the trust in excess of $5,000 per year during the lifetime of her stepmother. Pursuant to a motion by the trustee, the Northwestern University was made a party defendant. It filed an answer admitting the allegations of the complaint and disclaiming any right to the excess income sought by plaintiff. The counterclaim of the University prayed that the court construe the trust agreement so as to find that the gift over of the remainder was invalid as a charitable gift and that the remainder estate reverted to Boomer and passed by his will to the University. The Home filed a motion to dismiss the complaint on the ground that the plaintiffs had no litigable interest and a motion to dismiss the counterclaim of the University on the same ground and also on the ground that the counterclaim was premature. The trustee filed an answer and petition for instructions and construction of the trust instrument, making Laura K. Boomer an additional party. She defaulted. The court entered a decree adverse to the contentions of Mrs. Pursell and the University and they prosecute separate appeals.

The plaintiff's theory is that the trust instrument made no disposition of the excess income which is payable to her under her father's will. The theory of the University is that the provisions of the trust agreement giving the trustee the power and authority to select an

ultimate distributee in certain circumstances are invalid and that the corpus of the trust has reverted to and vested in the estate of Paul C. Boomer, deceased, and passes after the death or remarriage of Mrs. Boomer to the University as legatee under the will, and that the University has a vested interest in the remainder estate of the trust by the terms of Dr. Boomer's will; that the case is not premature because the Home, having abandoned the operation and maintenance of a "home" has forever forfeited its right to the trust estate and cannot reinstate itself so as to qualify before the death or remarriage of the life tenant. The theory of the Home, in meeting the case of the plaintiffs, is that the trust agreement plainly manifests the intention of the parties thereto that all income of the trust in excess of $5,000 per year required for payment to Laura Boomer shall be accumulated by the trustee during her lifetime and that accordingly there was no resulting trust of such excess income in favor of Dr. Boomer's will; that the provisions of his will with respect thereto are wholly nugatory; and that accordingly plaintiffs do not now have and never can have any interest in the subject matter of the complaint. The theory of the Home as to the case presented by the appeal of the University, is that the provisions of Paragraph 6 of the trust agreement giving the trustee power and authority to select a distributee of the corpus of the trust estate in certain circumstances are valid; that accordingly there was no resulting trust of the principal of the trust estate in favor of Dr. Boomer or his executor; that at the time of his death he had no interest whatever in the principal of the trust estate; that the provisions of his will with respect thereto are wholly nugatory; that accordingly the University does not have any interest in the subject matter of the action; and that in any event the time for determining the existence or nonexistence of the circumstances giving the trustee the right to select a dis-

98

tributee is at the termination of the trust on Mrs. Boomer's death or remarriage and that the counterclaim was prematurely filed and properly dismissed. The trustee's theory is that the trust agreement, both by express language and necessary implication, requires it to accumulate the "excess income" for the benefit of the named charitable beneficiary, and that the provisions of the trust agreement with reference to the selection of the charitable beneficiary, if the designated beneficiary fails to qualify, is a valid one; that since the time for distribution of the corpus will not arrive until the death or remarriage of the life beneficiary, it is premature to determine whether the designated charitable beneficiary qualifies; and that the allegations with reference to the present circumstances of the Home are therefore immaterial.

Plaintiff maintains that the trust agreement does not contain an express or implied direction to accumulate the excess income. She says that the words "accumulated income" used in the gift of the remainder interest, distinguishing income from principal, as held in the inter vivos trust construction cases and in the will cases cited by her, mean (a) the income "accumulating" in the interval between the life tenant's death or remarriage and (after the trustee has determined what institution is to receive the principal) the time of final distribution; (b) the words do not imply a direction to accumulate and (c) they do not refer to surplus income during the life of the widow. In determining whether the trust agreement directs accumulation of surplus income the cardinal principle is to ascertain the intention of the settlor. In United States Trust Co. of New York v. Jones, 414 Ill. 265, the court said (at p. 270) that "the object of judicial construction of a written instrument is to ascertain the true intent of the parties and to carry it out if it does not conflict with any rule of law, or good morals, or the public policy of the state." The entire trust agreement should

99

be examined for the purpose of ascertaining the intention of the parties. We are satisfied that the trust agreement disposes of the "excess income" both by express language and by necessary implication. The trust agreement defines income to mean the "increments, issues, profits, produce, proceeds, revenue, dividends (including stock dividends), interest on and receipts from any and all securities." The trustee is directed to receive and hold the income, to pay the net income to the settlor during his lifetime; upon the death of the settlor to pay "out of said net income" $5,000 per annum to his widow; and on the death or remarriage of the latter "the whole principal of said trust estate and all accumulated net income thereof" shall forthwith be distributed to the named charitable beneficiaries. The accumulated and undistributed net income refers to net income remaining after the payment of $5,000 per annum to Mrs. Boomer. The agreement shows an awareness of income on the part of the settlor. The term is particularly defined. There are directions to pay out all net income while he lives and after his death directions to pay only a part "out of" the income and finally to distribute the accumulated and undistributed net income together with the corpus upon the termination of the life estate. These provisions constitute an express disposition of the income. The settlor's awareness of income, coupled with the fact that the very direction out of which the excess arises, is in terms a direction to pay out a portion only, indicates that the settlor did not overlook the fact that there might be an excess of income. He anticipated the existence of such an excess and the final direction to pay the accumulated and undistributed net income along with the corpus was intended to dispose of the excess income. We have read the cases cited by the learned counsel for the respective parties. The views expressed in these opinions must be read in con-

100

nection with the facts and issues involved. We are of the opinion that the trust agreement directs that all income in excess of $5,000 per annum, required for payment to Laura Boomer, be accumulated during her lifetime or until she remarries, and that as to the income in excess of $5,000 there is no resulting trust or reversion in favor of Boomer's estate. The parties discuss the effect of a 1937 amendment to the trust agreement. In deciding the issues we have not considered this agreement because it did not go into effect.

The University argues that when the Home abandoned the operation and maintenance of "a home for destitute crippled children," there was an abandonment, forfeiture and reversion to the settlor of whatever interest the Home had under the trust instrument. We agree with the contention of the Home that under the express language of the trust agreement the question as to whether the interest of the Home shall be divested cannot be determined until the death or remarriage of Laura Boomer. The trust agreement states that if the settlor's wife shall survive him "then upon her death or remarriage" the trust estate "shall forthwith" be distributed by the trustee to the Home, and that if "at the time provided for said distribution" the Home shall not be in existence or shall have abandoned the operation and maintenance of a home for destitute crippled children, "then and in such event" the trustee shall "then" pay and distribute the trust estate to the Chicago Home for Convalescent Women and Children, and that if the latter "shall not then be in existence" or shall have abandoned the operation and maintenance of a home for convalescent women and children "then" and "in such event" the trustee shall "then" pay and distribute the trust estate to such charitable, educational or scientific institutes or institutions "then" in the City of Chicago as the trustee may select.

101

We are of the opinion that the rule announced in Strawn v. Jacksonville Female Academy, 240 Ill. 111, controls the instant case. There the court said (at p. 118):

"As to the homestead property devised by the twelfth clause of the will, it does not appear from the allegations of the bill that any reason exists for asking the aid and direction of a court of equity. No duty with reference to that property is imposed upon the executors until it has ceased to be occupied by the children of the testatrix, or the survivor of them, as a homestead. The court will not anticipate that a controversy will then arise and declare the rights of the parties in the event of such controversy occurring. Courts of equity will never entertain a suit to give a construction to or declare the rights of parties upon a state of facts which has not yet arisen, nor upon a matter which is future, contingent or uncertain."

See also Chicago Title & Trust Co. v. City of Waukegan, 333 Ill. 577. The allegations of fact in the pleadings in the instant case, admitted by the motions to dismiss, do not foreclose the possibility that the Home may qualify for distribution upon the termination of the estate of Laura Boomer.

In view of the rule announced in the two cases last mentioned it is unnecessary for us at this time to decide whether the gift over of the remainder of the trust contained in Paragraph 6 of the trust agreement "to such charitable educational or scientific institutes or institutions then in said City of Chicago as said trustees may select" creates a valid trust. As it cannot be known whether or not at the time of the death or remarriage of the widow the Home will have qualifications to avail itself of the provisions of the trust agreement, the court should not at this time make any findings or orders on that subject. If at the time for distribution the Home is not then meeting the condi-

102

tions set forth in the trust agreement, it will be the duty of the trustee to defend the trust estate against a claim made by the Home. If at the time for distribution (the death or remarriage of Laura Boomer) the Home is then in good faith carrying on the required activities, the prior period of abandonment would not be material. It follows that there should be no findings or orders in the decree determining the rights of any interested parties in the event of the failure of the named charitable remaindermen.

For these reasons the decree of the Superior Court of Cook county is reversed and the cause is remanded with directions to enter a decree in accordance with the views expressed.

Decree reversed and cause remanded with directions.

FRIEND, P. J. and NIEMEYER, J., concur.