THOMAS C. LAMBOS, Plaintiff-Appellant, *v.* GEORGE C. LAMBOS *et al.*, Defendants-Appellees.

(No. 54844; ■■■■■■■■

First District—December 29, 1972.

*Rehearing denied February 6, 1973.*

Narcisse A. Brown, John W. Noble, Jr., and J. Charles Sheerin, all of Noble, Brown & Sheerin, of Chicago, for appellant.

Berman and Newman, and Norman Edelstein, both of Chicago, (Leonard E. Newman, of counsel,) for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This appeal involves a controversy between two brothers concerning the meaning of three paragraphs in a land trust created by their parents. After they had survived the other members of their immediate family, the brothers differed with respect to the construction of the trust provisions that governed succession in the trusteeship and those that limited the authority of the trustee to deal with the trust property. In a suit by appellant, the trial court construed these provisions as appellees contended. The sole issue is whether this construction was correct.

## I.

Christ J. Lambos and his wife Diamanto were the parents of four sons: James C., Nicholas C., George C. and Thomas C. Lambos. On July 11, 1951, using a printed form that had spaces for insertion of needed detail, they created what is commonly called an Illinois land trust and conveyed to their son James, as trustee, a parcel of real estate situated in Chicago. In the blank space for designation of beneficiaries, there was typewritten language that these were to be "Christ J. and Diamanto Lambos, his wife, not as tenants in common but as joint tenants and upon the death of either, then to the survivor, and upon the death of both, then to James C. Lambos, Thomas C. Lambos, Nicholas C. Lambos and George Lambos, or the survivors among them in equal shares, share and share alike [sic]."

In the printed part of the trust form, it was provided that

"* * * in the event of * * * the death, dissolution, incapacity or inability to act of any trustee, a successor or successors may be appointed by the person or persons then entitled to direct the trustee in the disposition of the trust property, and the trust property shall thereupon pass to and vest in such successor or successors in trust."

Then, with the names typewritten, the trust agreement contained this paragraph:

"It is understood and agreed by the parties hereto and by any person who may hereafter become a party hereto, that the trustee will deal with said real estate only when authorized to do so in writing and that the trustee will, (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed in writing by the beneficiaries,) on the written direction of Christ J. and Diamanto Lambos or the survivor of them, and upon their death on the written direction of James C. Lambos,

Thomas C. Lambos, Nicholas C. Lambos and George Lambos, or the survivor among them or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time * * *."

Finally, in the last paragraph, there were these typewritten words:

"In the event of the inability or refusal of James C. Lambos to act when directed to do so then George Lambos shall act as successor trustee with all powers and rights given to the Trustee herein * * *."

Christ J. Lambos died in 1954. James died on December 5, 1960. George assumed the duties of successor trustee. On October 1, 1962, he conveyed the trust property to his mother, Diamanto. Nicholas predeceased his mother in 1967. Then on October 2, 1967, Diamanto Lambos died leaving appellant Thomas and appellee George as her survivors. In her will, she devised the trust real estate, a hotel worth $60,000, to George and his wife Pauline. She devised another parcel of real estate, a two-flat building worth $30,000, to Thomas.

On July 23, 1968, appellant filed a complaint to construe the land trust, appoint a successor trustee and for other relief. He alleged that in 1960 when James died, no successor trustee was appointed; that when in 1962, George conveyed the trust property to his mother, there was no written direction from her; therefore, the conveyance was void and the real estate was still in the trust. Appellant prayed that the trust property be sold and the proceeds be divided among the owners of the beneficial interests.

Appellees, George and his wife Pauline, appeared and answered the complaint. Later, appellant made a motion for summary judgment on the issue of George Lambos' right to assume the duties of trustee after the death of James in 1960. The motion was overruled but appellant elected to stand on his motion. Evidence was then heard which consisted of two witnesses called by appellees in an attempt to prove that in October 1962 when George conveyed the trust property to his mother, he had a written direction from her. After hearing the parties, the trial court entered a decree which found that the trust was created in 1951; that it contained the three paragraphs in question; that the trustee died in 1960 and George Lambos assumed the trusteeship; that in October 1962, Diamanto Lambos had the authority to direct the trustee or any successor trustee to issue a deed to the trust real estate; that on or about October 1, 1962, George Lambos conveyed the trust real estate to Diamanto Lambos but he had no written direction from her to do so.

The trial court, however, construed the trust so that the typewritten provisions which named George Lambos successor trustee prevailed over

the printed portion which required that a successor trustee be appointed. As to the requirement of a written direction, the court concluded that since Diamanto Lambos had the power to direct the trustee, or any successor trustee, to issue a deed, it was not necessary, as required by the trust, that she give the trustee a written direction to issue a deed to her. It is this construction that gives rise to the issue presented for our review.

## II.

■■■ In resolving the issue, we must construe the land trust which Christ J. and Diamanto Lambos created in 1951. In doing so, it is our duty to examine the trust document to ascertain the intent of the parties and carry out that intent if it does not conflict with a rule of law, good morals, or the public policy of the State. (*United States Trust Co. of York v. Jones,* 414 Ill. 265, 270, 111 N.E.2d 144.) And in making this examination, the entire document must be considered. (*Harris Trust & Savings Bank v. First National Bank,* 11 Ill.App.2d 94, 99, 136 N.E. 2d 603.) If the trust agreement contains inconsistent provisions, we must give effect to the primary or dominant intent reflected by the instrument. *Bear v. Millikin Trust Co.,* 336 Ill. 366, 381, 168 N.E. 349.

■■ A reading of the land trust created by Christ J. Lambos and his wife Diamanto reveals that they intended to convey title to their real estate, in trust, so that with little inconvenience to them they could enjoy its proceeds during their lifetime. In fact, these are the advantages of an Illinois land trust. (See *Robinson v. Chicago National Bank,* 32 Ill.App.2d 55, 58, 176 N.E.2d 659; Kenoe Land Trust Practice 1—15 (Ill. Inst. for CLE, 1972).) Therefore, it is reasonable to conclude that the settlors of this trust desired an automatic succession of the named son to the trusteeship.

■■■ This construction, reached by an able trial judge after careful consideration of the entire trust agreement, is supported by the law of contracts and the law of trusts. Rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments. (*Plast v. Metropolitan Trust Co.,* 401 Ill. 302, 313, 82 N.E.2d 155.) In the law of contracts, a typed portion of a document that manifests agreement prevails over the printed portion in determining its construction. *Dixon v. Montgomery Ward & Co.,* 351 Ill.App. 75, 89, 114 N.E.2d 44.

Despite the logic of these rules, appellant argues that the typewritten provisions do not apply because they were to take effect "[i]n the event of the inability * * * of James C. Lambos to act * * *." In pressing this point, appellant reminds us that his brother James died; he did not

suffer an inability to act. Death, appellant insists, is not included in the term "inability."

■■ We find this argument totally lacking in substance. Death is an inability. (See *Telefilm, Inc. v. Superior Court* (1949), 33 Cal.2d 289, 201 P.2d 811.) Webster, a fundamental source of our language, tells us that inability means a "quality or state of being unable: lack of ability: lack of sufficient power, strength, resources, or capacity." (Webster's Third New International Dictionary, p. 1139 (1966).) It is not easy to conceive of an inability more complete than death. We conclude that under the typewritten provisions of the trust, George C. Lambos was the successor trustee when James, the trustee, died in 1960. In our judgment, the trial judge ruled correctly when he placed this construction on two apparently inconsistent provisions of the trust agreement. See *Berman Leasing Co. v. Chicago Terminal Clearance, Inc.*, 88 Ill.App.2d 43, 232 N.E.2d 180.

One of the most important terms of the trust was the one which required that the trustee deal with the trust property only on the written direction of the beneficiary or beneficiaries with the power of direction. The trial judge found that in October 1962 when George Lambos conveyed the trust property to his mother, he did not have a written direction from her. The trial judge perceptively found, however, that when the conveyance was made, Diamanto Lambos had the power of direction. Since the deed was to her, the trial judge concluded that it was not necessary for the trustee to have a written direction.

We agree with this construction. There are many principles of trust law that support it. The rules that govern the administration of a trust, established by the trust instrument, are for the benefit of the *cestui*, the person who in equity is the owner of the trust property. If he voluntarily wants to withdraw from the protection of these rules, when fully competent, he may do so. (Bogert, Trusts and Trustees § 941 (2d ed. 1962).) A beneficiary who consents to an act or omission by his trustee, even one that is a breach of trust, cannot hold the trustee liable if he is competent, has full knowledge of the relevant facts, knows his legal rights and his consent is not induced by any improper conduct of the trustee. 3 Scott on Trusts § 216 (3d ed. 1967).

■■ Consistent with these principles, it has been held, in this jurisdiction and in others, that one who holds an equitable interest in land is bound by the sale of it by his trustee at his request, even though the request is not in writing. (*Rogers v. Tyley*, 144 Ill. 652, 666, 32 N.E. 393; *Ashby v. Standard Pipe & Supply Co.* (Tex. Civ. App. 1932), 56 S.W.2d 218.) It would follow that a beneficiary of a trust with the power of direction is bound by his oral request that the trustee convey the trust

property to him. For these reasons, it is our judgment that the construction which the trial judge placed on this important provision of the trust was correct. We affirm the judgment.

Affirmed.

SCHWARTZ and ADESKO, JJ., concur.