**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190534-U

Order filed July 8, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* ESTATE OF ROY L. FICKLIN, | ) | Appeal from the Circuit Court |
| | ) | of the Twenty-First Judicial Circuit, |
| Deceased | ) | Iroquois County, Illinois. |
| | ) | |
| (Stephen R. Ficklin, Executor of the Estate | ) | |
| of Roy L. Ficklin, Deceased | ) | |
| | ) | Appeal No. 3-19-0534 |
| Petitioner-Appellee, | ) | Circuit No. 08-P-47 |
| | ) | |
| v. | ) | |
| | ) | |
| Katherine Kuipers and Russell Ficklin, | ) | The Honorable |
| | ) | James Kinzer, |
| Respondents-Appellants). | ) | Judge, presiding. |
| | ) | |

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice O'Brien and Justice Daugherity concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court erred in reopening the Estate of Roy L. Ficklin because there were no assets, either remaining or newly discovered, to be probated. In conformity with the testator's intent, Petitioner Stephen Ficklin, individually and solely, is entitled to the contested parcels of real property. We authorize Stephen to execute a corrected deed from the Family Trust.

¶ 2    Petitioner Stephen Ficklin, in response to an order of the trial court granting a motion filed by respondents Katherine Kuipers and Russell Ficklin to set aside a deed in which he had conveyed two parcels from a Family Trust, of which he was trustee, to himself, sought leave to reopen the estate of the parties' father, Roy L. Ficklin, which had closed eight years earlier. All parties are surviving adult children of Roy Ficklin. Over respondents' objection, the trial court granted the petition and allowed Stephen to issue himself a warranty deed for the two tracts of land he had transferred to a family trust a year before his father's estate was closed. Thereafter, Stephen filed an inventory, final accounting, and final report in Roy's reopened estate. The trial court accepted the final report and closed the estate over Respondents' objection. Katherine and Russell have appealed.

¶ 3                                    FACTS

¶ 4    Roy L. Ficklin, a long time Illinois farmer, died testate on May 24, 2008, in Iroquois County. He was survived by his wife, Lucille, and his three adult children, Stephen, Katherine, and Russell. Roy's will included provisions directing gifts and distributions of property to his wife and children with variations depending on whether or not Lucille survived him. Stephen was designated as the estate's executor and administrator. The will, which is quite long and detailed, contained four major distributive provisions pertinent to this appeal. One of those provisions makes the terms of a specific land trust relevant as well.

¶ 5    In Article 2 of the will, entitled "Gifts on My Death," Roy made the following bequests:

A.  All his tangible personal property, which is specifically defined in section 2.1, to Lucille because she survived him.

B.  The "tax-sheltered gift" to a trustee to hold as a Family Trust. The administration and distribution of the assets of this trust on termination were described in Article 4. The

2

"tax-sheltered gift" was defined in Article 14, section 14.11 and it included, but was not limited to, two parcels of real estate held in Land Trust 104. The Family Trust section provided for payment of all income to Lucille, for potential invasion of principal if necessary for her health and maintenance, and, upon her death, for termination of the trust and distribution of its assets to the living children, *per stirpes*, in equal shares.

C. The "balance of [the] estate" to a trustee to hold as a Marital Trust. The administration and distribution of the trust assets in equal shares, *per stirpes*, on its termination were described in Article 3. The "balance of the estate" is defined in Article 14, section 14.1.[1] Stephen was named trustee of both the Family Trust and Marital Trust, with Katherine and Russell identified as potential successors if Stephen failed to so act.

D. Certain specific bequests which "shall be added" to the distribution of each child's share "notwithstanding the foregoing provisions" (described in A – C above):

(1) to Stephen (section 2.4) two specifically identified parcels of real property. Roy stated that "no portion of [those] parcels shall pass to the other shares for my remaining children (or their descendants)." He acknowledged that this addition to Stephen's otherwise-equal share would result in the passing of unequal shares to his children. Because these parcels were included in Land Trust 104, the will directed that "all interest in the beneficial interest therein and power of direction thereover" should pass the same way the parcels did.

---

[1] No "balance" remained after the creation of the Family Trust, so this trust was never created.

(2) to Katherine (section 2.5) the residence on East Lincoln in Onarga, Illinois. As with Stephen's bequest, Roy stated that the other two children and their descendants should have no interest in this bequest to Katherine. He also acknowledged that this addition to Katherine's otherwise-equal share would result in the passing of unequal shares to his children.[2]

(3) to Russell (section 2.6) there was no bequest of real property, however he would receive, presumably solely, the benefits of the Roy F. Ficklin Irrevocable Life Insurance Trust.

E. The will also contained an Article 16, entitled "Statement of Purpose and Estate Planning Agreement" in which Roy described, clearly and in significant detail, the time and thought he and Lucille had put into determining how their assets should be divided among their children and the care they had taken to discuss with the children, as a family unit, the decisions they had made and the reasons for them. He referenced their need to balance their business responsibilities to Stephen with their personal desire to treat all of their children both fairly and equally. He asked that the children respect, understand, and appreciate their arrangements as expressions of love for all of them and that they maintain and grow their familial relationships. He further stated that, to ensure that their intentions would take effect, he and Lucille had executed reciprocal wills, had agreed that neither of them, while they both lived, would make

---

[2] In Article 15, seemingly to ensure protection of this bequest even while Lucille continued to live in the residence, Roy authorized, but did not require, his executor to put the residence in yet another trust providing that, no matter what Lucille elected to do with it, that residence, any replacement residence, or the proceeds of any sale would remain sheltered for Katherine.

4

any changes, and had provided that any changes after the death of one of them "may only be taken with the written consent of all three of our then living children…"

¶ 6        Roy's will was executed April 28, 2008. On that same day Lucille transferred her 50% beneficial interest in Land Trust 104 to Roy. Less than a month later, on May 24, 2008, Roy died. At the time of his death, he owned 100% of that beneficial interest.

¶ 7        On June 20, 2008, Stephen filed a petition to begin the probate of his father's estate in Iroquois County. The Will was admitted to probate with Stephen appearing both as representative/administrator of Roy's estate and individually as an heir. An inventory of the estate filed on September 25, 2008, included two parcels of farmland identified as TRACT VII and TRACT VIII. The inventory documented that Stephen was the owner of record "as trustee under the provisions of [Illinois Land Trust 104]." No property other than TRACT VII and TRACT VIII was listed as being held in Land Trust 104.

¶ 8        During probate, Stephen, acting as Trustee of Land Trust 104, conveyed Tracts VII and VIII from the land trust to the Ficklin Family Trust and recorded that Trustee's Deed in Iroquois County on October 24, 2008. Stephen also appears as grantee trustee in the conveyance. The Trustee's Deed stated that the Land Trust Trustee was granting and conveying the tracts to the Family Trust "pursuant to the authority, direction, terms and provisions of the Last Will and Testament." No separate letter of direction was filed[3] nor does one appear in the appeal record. In 2009, Stephen filed a final report for Roy's estate. The trial court accepted the report, discharged Stephen as executor, and closed Roy's estate.

---

[3] A letter of direction is a written and signed instrument from the beneficiary of a Land Trust authorizing and directing the Land Trustee to dispose of her beneficial interest in an instructed manner. *See Marquette Bank v. Heartland Bank and Trust Co.*, 2015 IL App (1st) 142627, ¶¶ 15-17 (describing the effect of the beneficiary's letter of direction).

¶ 9     In June 2016, Lucille Ficklin died and in September of that year Stephen, acting as fiduciary and Trustee of the Family Trust, deeded the tracts from himself as Trustee to himself individually. A year later, respondents learned of the transfer and filed a motion in Lucille's probate proceedings to set aside the deed. The trial court granted their motion by written order on January 18, 2018, finding that the tracts were never validly transferred from the Land Trust 104 to the Family Trust because Stephen, as the holder of the beneficial interest, had not provided written direction to the Land Trust trustee (also Stephen) to make the transfer. Consequently, the court determined the attempted conveyance had failed and the Family Trust trustee had no tracts to convey to Stephen. The court concluded that Land Trust 104 had retained legal title to the tracts and they remained in Roy's estate as non-probated assets. In accord with this decision, Stephen filed a petition to reopen Roy's estate, which the trial court granted on March 5, 2018, and reaffirmed on May 3. In the latter order the court stated that it did not "see any reason for an evidentiary record" to reopen the estate because "an adequate record already [existed] in" Lucille's probate case. The same day, respondents filed an answer and an affirmative defense opposing reopening Roy's estate. They argued laches and estoppel. On June 8, 2018, Stephen filed an inventory and final accounting, asserting that the disputed tracts of land were distributed to him on April 5, 2018, by warranty deed. He also filed a final report indicating that no new inventory was required nor was a final accounting necessary under 755 ILCS 5/28-6. On June 8, 2018, Stephen filed a receipt showing that he received Tracts VII and VIII as heir and legatee under Roy's Will.

¶ 10     On July 20, 2018, Russell and Katherine filed an objection to Stephen's final report, arguing that a full accounting of what was occurring in the "new" probate was required and denying that Section 28-6 exonerated Stephen from that responsibility. They also noted that

certain assets that Stephen had previously indicated had been transferred to the Family Trust, as legatee, were never identified in the trust accountings. Citing *Lambos v. Lambos*, 9 Ill. App. 3d 530 (1972), they contended that no letter of direction was required because, as grantor and grantee, Stephen acknowledged and consented to the conveyance of the two tracts. Before the trial court held a hearing or ruled on the objection, respondents filed an appeal. There was, however, no final order and the appeal was dismissed for lack of jurisdiction. *Ficklin v. Kuipers*, 2019 IL App (3d) 180433-U, ¶ 15.

¶ 11    Thereafter, respondents renewed their objection to Stephen's final report, and Stephen responded. The trial court, following a hearing, issued a written order on August 12, 2019, denying the renewed objection and approving the final report. This order reiterated the major factual findings and legal conclusions in the order previously entered in Lucille's estate on January 18, 2018, which had invalidated the transfer of the two tracts, first to the Family Trust and later to Stephen, for want of a letter of direction. In the new order, the court also found that respondents had no standing to object to the distribution of the real property to Stephen or to the final accounting and report of the reopened estate. It further concluded that all issues regarding the estate proceedings were precluded under the doctrine of *res judicata* because respondents were attempting to reargue issues already raised when the estate was reopened. Thereafter, the court approved the final accounting and report, and closed the estate. Katherine and Russell appealed.

¶ 12                                ANALYSIS

¶ 13    In this appeal, respondents seek review of the circuit court's orders of March 5, 2018; May 3, 2018; June 25, 2018; and August 12, 2019. The combined effect of the first three orders was to allow Stephen, following a determination by the court that the beneficial interest in Land

7

Trust 104 had not previously been probated, to reopen Roy's estate and complete the probate as Roy's executor. The fourth order noted the execution and recording of a warranty deed conveying the challenged parcels to Stephen; approved the inventory, final accounting, and amended final report, thereby completing the probate; "over-ruled" respondents' objections to the proceedings and to the disposition of the beneficial interest, finding they had no standing, and that relitigation of the issues was barred by *res judicata*; and closed the estate.

¶ 14    Respondents identify three issues for our review: (1) was there a valid conveyance of farmland from Land Trust 104 to the Ficklin Family Trust in 2008? (2) did the court err in its application of 755 ILCS 5/24-9 in reopening Roy's estate? and (3) did the court err in failing to consider or address Stephen's fiduciary obligations? In addition, as previously noted, the trial court did not rule on respondents' objections, asserting in its August 12, 2019, final order that they were barred by issues of standing and *res judicata*.

¶ 15    As we address these issues, we are guided by the principle that the paramount obligation of courts in resolving probate challenges is to effectuate the intent of the testator so long as doing so does not violate the law or public policy. *Stites v. Gray,* 4 Ill. 2d 510, 512 (1954). See also *In re Estate of Lello,* 2016 IL App (1st) 142500, ¶ 15. Here Roy's intent, and that of his wife Lucille, is expressly stated in the wills they planned and executed.

¶ 16    The terms of the wills were designed to achieve two interim purposes before ultimately completing their single distributive goal. As described by Roy in Article 16, their ultimate intent was to bequeath as large a portion of the assets he and Lucille had acquired as possible to their three children in shares they had determined were both equitable and just. To that end they

8

executed reciprocal wills[4] to ensure their agreed plan would be carried out no matter which of them died first. As it happened, Roy was the first to die so the plan to achieve their interim purposes unfolded as set out in his will. First, the will initiated a tax-deferral strategy involving the creation of sheltering marital and family trusts to minimize the bite federal estate taxes would take out of their accumulated assets. The second purpose was to ensure that all the needs of Lucille, as the surviving spouse, were met for the balance of her life.

¶ 17        Relative to final distribution, the will identified a single specific bequest to each of Roy's children to be theirs alone *without possibility of diversion of any of that interest to the other siblings*. In an apparent effort to preserve as much of the tax-sheltered gift as possible, Roy used the property bequeathed to Stephen to generate or augment a stream of income for Lucille's care, so the distribution of his bequest was deferred until her death. Similarly, for Lucille to continue to live in the family home and to make decisions relative to it, Katherine's receipt of her specific bequest was also deferred. The authorization to invade principal if necessary for Lucille's continued care and the latitude given Lucille regarding the residence put both bequests at some risk of diminution; authorized trusts could help protect these assets so all of Roy's testamentary objectives could be met. Upon Lucille's death, the distribution directed in Article 2 of Roy's will could finally be completed. Stephen would receive his two tracts of land and Katherine would receive the house (or its equivalent). Russell would presumably have already received his insurance trust. Everything else remaining in Lucille's estate would be distributed to the three siblings in equal shares, *per stirpes.* Roy's intent in this regard is clear and nothing about that

---

[4] Lucille's will is not in this appeal record, but there has been no representation that it was changed in any way between Roy's death and hers.

intent violates either law or public policy. It is, therefore, front and center in this analysis and should be effectuated.

¶ 18     Before tackling the issue at the heart of this case, we briefly consider the trial court's conclusions that respondents (1) lacked standing to challenge Stephen's entitlement to the two real estate parcels and (2) were precluded from advancing their arguments by principles of *res judicata.* Regarding standing, respondents have taken the position that transfer of the parcels into the Family Trust rendered them subject to equal distribution under Lucille's will. They thus articulate a legally cognizable interest in the property bequeathed to Stephen in Roy's will. The reopening of Roy's estate and the open status of the very asset they seek gives them standing to advance a claim. *Illinois Road and Transportation Builders Assn v. County of Cook,* 2022 IL 127126, ¶ 13 (quoting *Greer v. Illinois Housing Development Authority,* 122 Ill. 2d 462, 492-93 (1988).

¶ 19     The applicability of *res judicata* requires unity of issues and of parties and a final adjudication on the merits. *Hudson v. City of Chicago,* 225 Ill. 2d 462, 467 (2008). Stephen, in his individual capacity, Katherine, and Russell were parties in both actions. However, Stephen in his status as executor served as the voice of the estates of his parents. The Estate of Lucille Ficklin and the Estate of Roy Ficklin are different parties and each is integral to the separate proceeding in which they appear. The requirement of unity of parties for *res judicata* is not met. Moreover, in reopening Roy's estate for further action on the very property being sought by respondents, despite having issued its first "final" order, the trial court cast doubt on its finality.

¶ 20     Neither lack of standing nor *res judicata* bars consideration of respondents' arguments on the merits. The trial court did not address them on the merits and we would normally remand this matter for it to do so. However, the ultimate resolution of this case turns on the ascertainment of

10

the testator's intent as manifested in the terms of Roy Ficklin's will—a determination we are as well positioned as the trial court to make. We also have authority, pursuant to supreme court rule 366, to do so and we choose to exercise it in this case. *See* Ill. S. Ct. R. 366(a)(5) ("reviewing court may, in its discretion, and on such terms as it deems just, *** enter any judgment, and make any order that ought to have been given or made").

¶ 21    The central issue before us in this case is whether the trial court erred when it reopened Roy's estate. At the heart of that issue is the question of whether there was a valid conveyance from Land Trust 104 to the Family Trust. We believe that there was.  On April 28, 2008, Lucille conveyed her 50% beneficial interest in Land Trust 104 to Roy so that he possessed 100% of that interest at the time he executed his will, also on that same date. In the will he directed the creation of the Family Trust and gave "the tax-sheltered gift to the trustee to hold as the Family Trust." The tax-sheltered gift included the two parcels of land at issue.

¶ 22    Roy's will was, in fact, the "letter of direction" from the then-holder of the beneficial interest to the trustee to convey the tracts to the Family Trust. Roy also instructed in the will that Lucille was the sole beneficiary of the Family Trust, thereby directing the trustee that the beneficial interest attached to those parcels of land would pass "in like manner" to Lucille. Under the terms of the Family Trust and as set out in Article 9, section 9.1 of the will, the beneficial interest differed from that in the land trust. While Lucille still received *all* of the income, she was not given the power of direction. Rather, she could, while willing and able, serve as "trust advisor" and instead of being an affirmative manager of the trust assets, she was a check on the trustee's divestment of them.

¶ 23    In short, Stephen's transfer of the property from Land Trust 104 to the Family Trust was properly authorized by the owner of the beneficial interest in a written instrument (the will),

which also transferred the beneficial interest to Lucille. That this was also Stephen's understanding of the will is shown by the statement in the Trustee's deed that the transfer of the parcels into the Family Trust was "pursuant to the authority, direction, terms and provisions of the Last Will and Testament." For these reasons, we find the trial court's conclusion that unprobated assets remained in Roy's estate to be error. Section 24-9 of the Probate Act of 1975 establishes two limited circumstances when a decedent's estate may be reopened: (1) when there are newly discovered assets; or (2) when there is an unsettled portion of the estate. 755 ILCS 5/24-9 (2018). Neither of those circumstances exists in this case and the reopening of Roy's estate was also error.

¶ 24    Using different reasoning, we have reached the same conclusion that respondents have advocated—that the transfer of the property from the Land Trust to the Family Trust was effective and there were no remaining or newly discovered unprobated assets in Roy's estate. That fact renders respondents' other two issues moot. It does not, however, support or strengthen their argument that an effective transfer of the two parcels into the Family Trust defeats the specific bequest to Stephen and requires the property to be distributed, in equal shares, to all three siblings.

¶ 25    That argument flies in the face of what we see as a clear and unambiguous directive to the contrary. Section 2.4 makes an unequivocal and specific bequest of parcels 1 and 2 to Stephen and, if Lucille survives him, delays distribution of that bequest and directs its transfer into the Family Trust to help finance Lucille's care while she lives. In essence, Roy bequeathed the parcels to Stephen in fee simple subject to a life interest for Lucille in income they could generate.

¶ 26        That the existence, terms, or operation of the Family Trust neither intended nor effected any change in Stephen's entitlement to sole ownership of the property is evidenced in Roy's will in three ways:  FIRST, the use of the phrase "[n]otwithstanding the foregoing provisions of this Article," referencing sections 2.1, 2.2 (a) and (b), and 2.3, to articulate that no matter what else was required in those sections, the specific bequest to Stephen would remain in effect; SECOND, the *caveat* after directing the gift that "no portion of which said parcels shall pass to the other shares for my remaining children (or their descendants)…."; and THIRD, the multiple unequivocal declarations of his intent appearing elsewhere in the will, but particularly in Article 16.

¶ 27        Based on the actual language of the will and on it multiple affirmative statements of Roy's testamentary intent, we hold that Stephen is solely and individually entitled to the two parcels of real property identified in Section 2.4 of Roy Ficklin's will.  We note that a Trustee's Deed was executed and recorded on September 15, 2016 that effectuated the transfer of the two parcels from the Family Trust to Stephen Ficklin.  However, that deed was set aside by the trial court when the Estate of Roy Ficklin was improperly reopened and because we have not been asked to review that decision, we lack jurisdiction to reinstate that trustee's deed.  We have determined, however, that the trustee of the Family Trust was the proper grantor and as such authorize Stephen Ficklin as the trustee of the Family Trust to execute a corrected deed conveying the land identified in Section 2.4 of Roy Ficklin's will to himself, solely and individually

¶ 28                                CONCLUSION

¶ 29        For the foregoing reasons, we find it was error to reopen the estate of Roy Ficklin and, doubting the validity of actions taken in an unauthorized proceeding, vacate them. We find that it

13

was the clear, and clearly expressed, intent of Roy Ficklin that the specific bequest to Stephen set out in section 2.4 of his Last Will and Testament be and remain effective regardless of whether or not Lucille survived him and the Family Trust was established and distributed pursuant to Article 4. We validate the legal basis for a warranty deed of the property identified in Section 2.4 of Roy Ficklin's will to Stephen, individually, and we authorize Stephen to execute a corrected deed from the Family Trust.

¶ 30       Judgment vacated.