ANGELINE R. KAVANAUGH, Plaintiff-Appellee, *v.* ESTATE OF JOSEPH M. DOBROWOLSKI, Deceased, Defendant-Appellant.

First District (2nd Division)    No. 79-846

Opinion filed June 24, 1980.—Rehearing denied July 23, 1980.

David G. Lynch, of Law Offices of Victor J. Cacciatore, of Chicago, for appellant.

· Frank R. Reynolds, Jr., of Reynolds & Reynolds, of Chicago, for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Angeline R. Kavanaugh, plaintiff-appellee, filed a claim against the estate of Joseph M. Dobrowolski (Alexander Dobrowolski, executor), defendant-appellant (hereinafter referred to as the Estate), for the proceeds from the sale by decedent during his lifetime of certain real estate. The claim alleged that, pursuant to an agreement between

decedent and Kavanaugh, said proceeds were to be held by decedent in trust for her benefit. After a bench trial, judgment in the form of a fifth class claim[1] was entered in favor of plaintiff in the amount of $62,258. The Estate appeals from this judgment. The issues presented for review are (1) whether a written agreement between decedent and plaintiff was enforceable as a declaration of trust; (2) whether the trial court erred in determining that the agreement between decedent and plaintiff was signed by decedent and thereby erred in admitting it into evidence; (3) whether the trial court erred in admitting certain parol evidence; (4) whether the trial court erred in denying defendant's motion for a directed verdict; and (5) whether the trial court erred in entering judgment in favor of plaintiff.

For the reasons hereinafter set forth, we reverse the judgment of the circuit court.

Decedent and Kavanaugh were friends for more than 20 years prior to his death on February 19, 1976. During the six years prior to his demise, decedent was often hospitalized and in nursing homes, and plaintiff often visited him there. He also lived in plaintiff's home on different occasions, and she cared for him for several months at a time during this period. Plaintiff was compensated for some of these services, and she does not contend that they constitute consideration for any agreement between the parties. She does assert, however, that in recognition of their friendship, decedent established a trust for her benefit in the proceeds from the sale of certain real estate. Although the record discloses that a plethora of exhibits was offered during the trial, the resolution of this conflict focuses on only four relevant documents (which we set forth in chronological order):

(1) A trust agreement executed by decedent Joseph M. Dobrowolski, dated January 19, 1970, bearing trust No. 4564 with the Western National Bank of Cicero (hereinafter referred to as Trust No. 4564);

(2) An agreement bearing the date of 1970, purportedly signed by decedent, concerning the proceeds from any sale of the real estate held in Trust No. 4564;

(3) A letter from decedent to Kavanaugh dated November 6, 1970 (hereinafter referred to as the "Dear Angie" letter); and

(4) A formal amendment to Trust No. 4564 executed by decedent and accepted by the bank, dated February 25, 1971.

For purposes of clarity, the evidence adduced at trial will be summarized as it relates to the preparation, execution and content of these documents.

---

[1] Claims of the fifth class are for "Money and property received or held in trust by decedent which cannot be identified or traced." Ill. Rev. Stat. 1977, ch. 110½, par. 18—10.

(1) Trust No. 4564.

The decedent, Joseph M. Dobrowolski, was settlor of Trust No. 4564, established with the Western National Bank of Cicero on January 19, 1970. Joseph Boucek, an attorney and trust officer of the bank, testified that decedent established this land trust for the property commonly known as 2315-17 South 50th Avenue, Cicero, Illinois. Decedent was well known to Boucek, and this trust was executed by decedent in his presence and also signed by Boucek as an officer of the bank. The trust provided that the beneficial interest was held by "Joseph M. Dobrowolski during his lifetime, with full power to dispose of the entire beneficial interest herein, and in case of his death, not having done so, then Angeline R. Kavanaugh." The trust further provided that the Western National Bank would deal with the real estate only on the written direction of Joseph M. Dobrowolski. Boucek testified as an expert witness that in his opinion this trust created no present interest in Angeline R. Kavanaugh; that any interest she might have would arise only upon the death of Joseph Dobrowolski, and that he retained the power to alter, amend, or revoke the trust without her consent. Mrs. Kavanaugh's attorney at this time was John Cook. He testified that he agreed that the trust, as written, was revocable because of decedent's power of direction, and he so informed Mrs. Kavanaugh sometime in 1970. Decedent eventually executed a letter of direction for deed dated December 28, 1972, to the trustee of Trust No. 4564, directing it to convey the real estate. The bank subsequently issued a deed to Peter and Mary Jestica, and Boucek testified that this action closed the trust with the bank.

(2) The Agreement.

In the interim between the establishment of Trust No. 4564 and the amendment to such trust on February 25, 1971, Cook prepared two other documents in an attempt to protect Kavanaugh in the event of a sale of the real estate in Trust No. 4564. One of these documents was captioned "Agreement" and provided that, *inter alia,* "in the event that Joseph M. Dobrowolski sells the real estate which is the subject matter of the said trust, he agrees to notify Angeline R. Kavanaugh of the fact of any such sale." Also, it stated that "in the event of such sale, he will hold the sale proceeds in trust retaining the income therefrom for his lifetime with the principal thereof to be the property of Angeline R. Kavanaugh after his death." The agreement further provided that it was the intention of the agreement and the provision of Trust No. 4564 "that the principal of the trust estate, howsoever constituted," should be held and invested with the income payable to decedent, and the principal payable to Kavanaugh at Dobrowolski's death. The agreement purports a consideration of "One ($1.00) Dollar and other good and valuable considerations" and is undated except for the year 1970.

Cook testified that he prepared the agreement and mailed it to Kavanaugh sometime after September 1970. Cook was informed by Kavanaugh that decedent was reluctant to sign such a formal looking document; nonetheless, the agreement bears the signature of a "Joseph M. Dobrowolski" and was also signed by the plaintiff, Angeline R. Kavanaugh. The authenticity of decedent's signature on this agreement is disputed and is the subject of the Estate's second issue on appeal.

(3) The "Dear Angie" Letter.

After Cook was informed that decedent did not want to sign a "formal" agreement, he prepared a letter bearing the date November 6, 1970, which was to be signed and ostensibly given by decedent to Mrs. Kavanaugh, evidencing decedent's intent to hold any proceeds from the sale of the real estate "subject to the same arrangement" as purported in Trust No. 4564. Cook testified that the substance of the letter accomplished the same result that was intended by the more formal document. He also stated that Kavanaugh contacted him on November 13, 1970, and told him that decedent had signed this letter.

(4) The Amendment.

After Cook informed Kavanaugh that her interest in Trust No. 4564 was of a revocable nature, a meeting was arranged with decedent to determine whether he would be willing to give her an irrevocable interest in the property. Cook testified that decedent "indicated" that he *did* want Mrs. Kavanaugh to have the property when he died; however, he wanted to retain the sole power to deal with the real estate while he was alive. Decedent made it clear that he did not want to be required to obtain the signature of Mrs. Kavanaugh in the event that he wanted to sell the property.

As a result of the discussion held on September 24, 1970, with decedent and Mrs. Kavanaugh, Cook subsequently prepared an amendment to Trust No. 4564. The executed amendment was mailed by Cook, along with a handwritten transmittal signed by decedent, to the Western National Bank of Cicero in February of 1971. Boucek testified that the bank did, in fact, receive the amendment and accepted it by signing the same on February 25, 1971. The pertinent portion of the document states that:

"I, JOSEPH M. DOBROWOLSKI, sole beneficiary under the above trust, * * * hereby direct that in case of my death, my said beneficial interest shall pass to Angeline R. Kavanaugh, if she shall be living at my death. This designation shall not be subject to change or modification without the joint consent of JOSEPH M. DOBROWOLSKI and ANGELINE R. KAVANAUGH."

It further amended the trust to provide that the trustee should deal with the real estate "only when authorized to do so in writing on the written

direction of Joseph M. Dobrowolski during his lifetime and Angeline R. Kavanaugh after his death, if he [sic] shall survive him." The amendment was signed by decedent, Kavanaugh and Boucek. Boucek testified that the amendment was effective on February 25, 1971, but in his opinion the trust, as amended, did not require the consent of Angeline R. Kavanaugh for decedent to sell the property or otherwise amend or revoke the trust. We note that the amendment made no reference to either the agreement of 1970 or the "Dear Angie" letter, nor did it incorporate these documents or relevant portions of their contents.

All four of these documents were admitted into evidence.

Sometime in 1972 decedent's son, Alexander Dobrowolski, obtained a power of attorney from his father. Pursuant to the power, Alexander contacted Western National Bank and requested that an additional mortgage be placed on the property that was the subject of Trust No. 4564. Boucek informed Alexander Dobrowolski that pursuant to the trust amendment dated February 25, 1971, Mrs. Kavanaugh would have to consent to any additional encumbrances on the property. Subsequently, on February 23, 1972, Alexander Dobrowolski, his attorney, Mr. Collins, Mrs. Kavanaugh and her attorney, Mr. Cook, met to discuss the possibility of increasing the existing mortgage on the property. An agreement could not be reached by the parties, and Alexander Dobrowolski stated that the property would have to be sold because it was unprofitable. Alexander Dobrowolski made several attempts to sell the property pursuant to his power of attorney but was unsuccessful. As mentioned previously, this property was, in fact, sold in December of 1972 under the direction of Joseph Dobrowolski and *not* pursuant to the power of attorney given to Alexander Dobrowolski.

After a bench trial, the court awarded Kavanaugh a judgment in the amount of $62,258, representing the proceeds from the sale of the property which the court determined was held in trust by decedent for Kavanaugh's benefit. The Estate appeals from this judgment.

■■ We note initially that two issues (denoted as numbers 4 and 5 on this appeal) presented by the Estate were not argued in its brief or on oral argument: (1) that the trial court erred in denying defendant's motion for a directed verdict, and (2) that the trial court erred in entering judgment in plaintiff's favor. Kavanaugh correctly asserts that points raised but not argued in appellant's brief are deemed waived under Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *Triple-X Chemical Labs, Inc. v. Great American Insurance Co.* (1977), 54 Ill. App. 3d 676, 370 N.E.2d 70). When appellant seeks reversal, theories presented without authority are deemed waived and, further, "a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment." (*Saldana v. Wirtz Cartage Co.*

(1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) Defendant's reply brief states that these issues were argued implicitly in his issue regarding the enforceability of the alleged trust. Therefore it is unnecessary to deal with these two points as separate issues on appeal.

Assuming, *arguendo*, that the signature on the agreement was that of the decedent, the dispositive issue on this appeal is whether any documents presented created an enforceable declaration of trust established by decedent for the benefit of the plaintiff, Mrs. Kavanaugh. To determine whether a trust has been created, it is necessary to decide exactly which documents will be considered in construing whether a trust was actually established. Kavanaugh argues that all four documents (Trust No. 4564, the amendment, the agreement and the "Dear Angie" letter) should be considered together to determine if an enforceable trust exists. The Estate, on the other hand, asserts that whether a trust in favor of Kavanaugh was, in fact, created must be determined solely by the agreement and the "Dear Angie " letter.

■■ Instruments executed contemporaneously and in a single transaction may be construed together and will be given their total effect. (*Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 95 N.E.2d 457.) Additionally, the entirety of the documents submitted must generally be reviewed to determine the settlor's intent. (*Lambos v. Lambos* (1972), 9 Ill. App. 3d 530, 292 N.E.2d 587.) In the case at bar Trust No. 4564 with the Western National Bank of Cicero (as amended) was not executed contemporaneously with the agreement or the "Dear Angie" letter. Although these two latter documents refer to Trust No. 4564 (at that time unamended), they were not expressly made a part thereof. Nor were they filed with the trust department of the bank, and when the trust was amended, it made no reference to the agreement or the letter nor to the contents thereof. These documents purport to incorporate the trust terms, but they never directly amended or modified that trust. Further, testimony of Mr. Boucek indicated that Trust No. 4564 was closed upon the sale in 1972 of the real estate held in the trust. Based on these facts, a fair reading of the trial record and the briefs in this case, it appears that there were two separate trust arrangements. One arrangement was the formal Trust No. 4564 and the amendment of February 25, 1971, with Western National Bank of Cicero. The other trust was created, if at all, by the agreement dated 1970 and the "Dear Angie" letter dated November 7, 1970. Both of these possibilities will be considered.

When the power of direction was exercised by decedent in December 1972, the sale of the real estate terminated Trust No. 4564 with the Western National Bank of Cicero. *In re Estate of Sacks* (1967), 89 Ill. App. 2d 1, 231 N.E.2d 688, presents a factual situation strikingly similar to the case at bar and is relied upon by Kavanaugh in support of her

contention that the proceeds from Trust No. 4564 were to be held in trust for her benefit. In *Sacks* an apartment building was the subject of a land trust with a life estate and the power of direction in the settlor/decedent and the remainder in named beneficiaries. The settlor directed the trustee to enter into a contract to sell the building with the installment payments to be made directly to decedent's account and the transfer of title to the property to pass upon payment of the total sales price. At the time of the settlor's death, the trustee still held title to the property and was receiving the installments which were given to the beneficiaries under the trust rather than to the administrator of the estate. In deciding that the beneficiaries were entitled to the proceeds, the court stated:

> "The trust res was the apartment building and upon its disposition, the proceeds of this disposition becomes the subject matter of the trust. This was the expressed intention of the grantor." (*Sacks*, at 11.)

However, the distinguishing factor in the case at bar is that the property was completely transferred out of Trust No. 4564, and the full proceeds were deposited by decedent into a separate account in December 1972 while he was still alive. At this time he evidenced no intent to continue the land trust nor to establish a new trust for Kavanaugh as was indicated by his previous agreements. Decedent had a right to the proceeds from Trust No. 4564 during his lifetime. The only obligation imposed upon him in December of 1972, when the trust was terminated, was his gratuitous declaration almost two years earlier that *if* that eventuality should occur, he would create a trust for Kavanaugh. Therefore, Trust No. 4564 and the amendment thereto was not an enforceable trust at the time of decedent's death. Consequently, if Kavanaugh's claim is to be sustained, an enforceable trust must be proved through the existence of the other documents executed by decedent during his lifetime.

○ 3 Kavanaugh relies upon the agreement and the "Dear Angie" letter as evidence of decedent's self declaration of trust for her benefit. Additionally, she maintains that Trust No. 4564 is relevant to her claim since the proceeds from that trust constitute the corpus to the declaration of trust. We must determine whether the legal requirements for the creation of a trust were satisfied by the agreement and the "Dear Angie" letter. To create a declaration of trust there must be words sufficient to raise a trust, a definite subject matter (corpus) and a certain or ascertainable object. (35 Ill. L. & Prac. *Trusts* §18 (1958); *Gurnett v. Mutual Life Insurance Co.* (1932), 268 Ill. App. 518, *aff'd* (1934), 356 Ill. 612, 191 N.E. 250.) *The intention of the settlor to presently create a declaration of trust is essential.* (76 Am. Jur.2d *Trusts* §34 (1975).) The Estate appears to concede that decedent's *intent* to create a trust is evident in the agreement and the "Dear Angie" letter; it merely asserts

that the intention is irrelevant to the determination of whether an enforceable trust was in fact created since the intention was not contemporaneously manifested with the existence of the trust corpus. Therefore, the crucial determination is whether, as the Estate asserts, the documents presented fail to create an express declaration of trust because they lack the required element of a trust corpus.

■■■ It is clear that the proceeds from the sale of the real estate in 1972 were not in existence at the time that decedent signed the agreement and letter in 1970. It is also evident from these two documents that decedent's intent at the time of their execution was that the proceeds of any sale of the real estate held in trust No. 4564 would be held for the benefit of Kavanaugh. The controversy focuses on whether these proceeds (the beneficial interest in the trust) admittedly realized by decedent from the sale of the real estate in the land trust were held by decedent for the benefit of Kavanaugh, subject to a retained life estate. In both the "Dear Angie" letter and the agreement decedent states that *if* the property is sold, he will hold the proceeds for the benefit of Kavanaugh, retaining his life estate. He also states that he will inform her of any intended sale of the property and also that he would create a new trust with the Western National Bank "subject to the same arrangement." Kavanaugh argues that this expressed intent is paramount, while the Estate argues that it is irrelevant. Intention without the other requirements necessary for the creation of a trust will have no effect. "Where a person promises * * * that he will himself be trustee of property at some time·in the future, a trust does not automatically arise when that time arrives." (I Scott, Trusts §26.5 (3d ed. 1967).) No trust will arise unless there is a manifestation of trust intention at the time the interest comes into existence. This is especially true where there was no consideration for the declaration of trust or a promise to create such a trust. (*Brainard v. Commissioner* (7th Cir. 1937), 91 F.2d 880, 882.) We note that in 76 Am. Jur.2d *Trusts* §35, at 281 (1975), it is stated:

> "Among the essential elements for the creation of any express trust is the definite and complete present disposition of the trust property, even though enjoyment of such property may take effect at a future time. It is essential to the creation of an express trust that the settlor presently and unequivocally make a disposition of property by which he divests himself of the full legal and equitable ownership thereof."

Our resolution of this conflict necessarily involves consideration of the creation of the trust from two distinct time frames. In 1970, when decedent evidenced his intent to create a trust for Kavanaugh, the proceeds, which would constitute the corpus of that trust, were not in existence. The corpus must be in existence at the time of the settlor's

declaration of trust (*Brainard*, at 881), and the words used by the settlor must evidence a completed transaction. (*Samuel v. Northern Trust Co.* (1975), 34 Ill. App. 3d 500, 340 N.E.2d 162.) In 1972, when the proceeds were realized by decedent, he did not indicate his intention to hold those proceeds for the benefit of Mrs. Kavanaugh. It is apparent that the essential elements of intention to create a trust and the existence of a trust corpus were not contemporaneously present in the transaction engaged in by decedent. Although we are aware of the general rule that the intention of the settlor is a paramount concern in construction of trust arrangements (*In re Estate of Anderson* (1966), 69 Ill. App. 2d 352, 217 N.E.2d 444; *In re Estate of Bentley* (1973), 14 Ill. App. 3d 630, 303 N.E.2d 166; *Northern Trust Co. v. Winston* (1975), 32 Ill. App. 3d 199, 336 N.E.2d 543), we are equally cognizant of the fact that a court is limited to establishing not what the settlor "meant to say, but rather what was meant by what he did say." (*In re Estate of Bentley*, at 633, citing *Barnhart v. Barnhart* (1953), 415 Ill. 303, 114 N.E.2d 378.) Decedent did not create an enforceable trust through the agreement and the "Dear Angie" letter, because his intention as expressed in such agreement and letter was predicated upon the possibility of a sale of the real estate which was the subject of Trust No. 4564. In 1972, when the sale actually occurred, decedent did not indicate a continuing intention to hold those proceeds in trust for Mrs. Kavanaugh. We cannot speculate as to his intentions where there is no clear expression that his purpose at the time the proceeds came into existence in 1972 was to hold such proceeds for Mrs. Kavanaugh's benefit.[2]

Kavanaugh maintains that a trust corpus did exist in 1970 because the power of direction which was held solely by decedent under Trust No. 4564 was in existence and it was itself a property interest. In support of this contention she cites Kenoe, Land Trusts §2.19 (Ill. Inst. Cont. Leg. Ed. 1978). Although a power of direction may under certain circumstances be a property interest (*Favata v. Favata* (1979), 74 Ill. App. 3d 979, 394 N.E.2d 443), there is no indication in the instant case that such was the intention of decedent. Additionally, Kavanaugh contends that decedent held the power of direction in a fiduciary capacity. Although this assertion may have validity if the decedent was not also a beneficiary, it is not well founded when he held a substantial beneficial interest in the trust himself. Under those circumstances, no fiduciary obligation is imposed upon him. *Favata*, at 986.

Kavanaugh finally asserts that even if there was not an express trust, there was a constructive trust in the proceeds held by decedent.

---

[2] We are constrained to note that disputes predicated on the intention of parties could well be avoided if adequate care was exercised in drafting appropriate documents. This is especially apparent where the person whose intention is in question is no longer available for examination.

Constructive trusts are generally divided into two categories; (1) where the trust is raised on grounds of active fraud or (2) where there is a confidential relationship and a subsequent abuse of that relationship. (*Ridgely v. Central Pipe Line Co.* (1951), 409 Ill. 46, 97 N.E.2d 817.) It has also been held that no confidential relationship is necessary for a constructive trust "if, in fact, the party has received money properly belonging to another under circumstances that in equity he ought not be allowed to retain." (*County of Lake v. X-PO Security Police Service* (1975), 27 Ill. App. 3d 750, 755, 327 N.E.2d 96; *In re Estate of Ray* (1972), 7 Ill. App. 3d 433, 287 N.E.2d 144.) A constructive trust would appear to arise only if the proceeds, in the case at bar, should have been given to Kavanaugh under some equitable principle. Since no consideration was given for decedent's promise to create a trust and decedent owed no other duty to Kavanaugh, it appears that the imposition of a constructive trust would be inappropriate in the case at bar.

● 6 Since we have determined that the documents presented to this court do not constitute an enforceable trust, we need not consider whether the signature on the agreement was that of decedent. We note, however, that although evidence pertaining to claims against an estate must be carefully scrutinized (*In re Estate of Heyder* (1965), 62 Ill. App. 2d 318, 210 N.E.2d 619), there was conflicting testimony concerning the authenticity of the signature. The trial court's resolution of the conflict must necessarily have been determined on the basis of the witnesses' credibility. In a bench trial, as in the instant case, the credibility of the witnesses is determined by the trial judge. (*In re Estate of Pomeroy* (1974), 21 Ill. App. 3d 648, 316 N.E.2d 231.) In order to reverse the decision of the trial court, an opposite conclusion regarding the authenticity of the signature must be clearly evident. This does not appear to be necessary in this case, and this factual determination by the trial court will not be disturbed.

Additionally, in view of the fact that we find that no enforceable trust exists, we deem it unnecessary to address the Estate's contention that certain testimony of Cook concerning the circumstances surrounding the preparation of the agreement was inadmissible as violative of the parol evidence rule.

For the foregoing reasons, we reverse the judgment of the circuit court and remand for proceedings not inconsistent with this opinion.

Reversed.

STAMOS and DOWNING, JJ., concur.