*In re* ESTATE OF JAMES A. CROOKS, SR., Deceased (Grace Crooks, Petitioner-Appellee, v. Emmanita Hendricks *et al.*, Respondents-Appellants).

First District (6th Division)   No. 1—92—3326

Opinion filed August 5, 1994.

716

Henry W. Kenoe and Thomas O. Elliott, both of Chicago, for appellants.

Ralph M. Bernstein & Associates, of Chicago (Sheryl E. Fuhr and Ralph M. Bernstein, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court: This case involves the extent of dominion retained by a benefi-

ciary of a land trust over the property in the trust. In 1979, the decedent, James A. Crooks, Sr., held five parcels of real estate in two land trusts. He executed a will, revocable trust and five quitclaim deeds in an attempt to transfer the properties into the revocable trust. In 1980, however, he directed the land trustee to convey four of the parcels to him individually. The land trustee issued a trustee's deed for the four properties. The fifth parcel remained in another land trust. He died in 1989. The executrix of his estate, his daughter, Emmanita Hendricks, did not include the parcels in the estate's inventory. Grace, the decedent's wife, filed a petition to compel the executrix to inventory the five parcels as assets of the decedent's estate. After a hearing, the trial judge held in favor of Grace; he concluded that the five real estate parcels were not properly transferred into the revocable trust but were assets of the estate. The respondents, Emmanita and her brother James A. Crooks, Jr., appeal from that finding. They are not children of Grace.

The decedent entered into a land trust agreement with Chicago Title & Trust Company (CT&T) on November 12, 1970; he was the sole beneficiary. He named the respondents as beneficiaries of the land trust upon his death. This CT&T land trust contained four parcels of real estate, located in Chicago. On October 16, 1974, the decedent accepted an assignment of the beneficial interest under another land trust agreement with the Hyde Park Bank. This trust contained one parcel in Chicago. Additionally, the decedent owned two other parcels in Chicago that were held in a land trust with the Exchange National Bank. Those two parcels are not at issue in this appeal.

On July 12, 1979, the decedent visited Kenneth Kwiatt, an attorney, to prepare an estate plan. Based on Kwiatt's recommendations, the decedent executed a will and a revocable trust. The sole legatee of the will was the "James Crooks, Sr. Trust." The revocable trust agreement stated, "I, James Crooks, Sr., declare myself trustee of the property described in the attached schedule." No attached schedule was produced in this case. According to the trust's terms, Grace would receive $15,000 and the residue of the trust would be distributed equally to Emmanita and James.

On the same day, the decedent also executed five quitclaim deeds for the five parcels held under the CT&T and Hyde Park Bank land trusts. The quitclaims stated in pertinent part:

> "THE GRANTOR JAMES A. CROOKS, a married person *** CONVEYS AND QUIT CLAIMS to JAMES CROOKS, SR. Trust Agreement dated July 11, 1979 *** all interest in the following described real estate ***."

The legal description of each parcel was provided in each quitclaim deed. On August 7, 1979, the five quitclaim deeds were properly recorded. The will and revocable trust were not amended after they were executed.

On October 31, 1980, the decedent delivered a letter of direction to the CT&T trustee. The letter directed the trustee to execute and deliver a trustee's deed naming "James Crooks" as grantee. The letter instructed the trustee to include all four parcels in the trustee's deed. The CT&T trustee complied and conveyed to "James A. Crooks" the four parcels contained in the CT&T land trust by one trustee's deed. The trustee's deed was recorded on December 16, 1980. The fifth parcel remained in the Hyde Park Bank land trust. No letter of direction was delivered to the Hyde Park Bank trustee.

The decedent died on March 10, 1989. An estate was opened, and the decedent's will and trust were admitted to probate. Grace renounced the will and received a surviving spouse's award. Emmanita filed an inventory and an amended inventory, both of which omitted the five parcels of real estate. Grace filed an objection to the inventory; she contended that all the parcels were owned by the decedent at the time of his death, either in fee simple or as a beneficiary.

Grace then filed a petition for citation to recover assets. She alleged that the four parcels from the CT&T land trust were assets of the estate because they were conveyed to the decedent individually by a trustee's deed. She claimed that the fifth parcel, which was still in the land trust with the Hyde Park Bank, was personalty and should have been included in the inventory as another estate asset. Emmanita and James responded to the petition. They claimed that the decedent attempted to fund the revocable trust with the five parcels through the execution of the quitclaim deeds and that those deeds effectively transferred the decedent's beneficial interest to the revocable trust. Their response also stated that an "ambiguity exists in said James Crooks, Sr. Trust as to precisely what property is included in said Trust as a result of the lack of an attachment to the Trust"; that the decedent "intended to transfer to himself as trustee of the James Crooks, Sr. Trust the legal and equitable title to said 7 parcels of real estate *** [and that] [d]ecedent made a mistake of fact, however, when he believed he held legal and equitable title to all seven properties"; and, that when he directed the CT&T trustee to convey a trustee's deed, he "knowingly breached his fiduciary duty under the James Crooks, Sr. Trust and practiced a constructive fraud upon the beneficiaries of said Trust by having the properties conveyed to himself individually rather than as trustee of the James Crooks, Sr. Trust."

A hearing was held on Grace's petition. Kenneth Kwiatt, the decedent's attorney, testified that he twice met with the decedent and Emmanita to set up the decedent's overall estate plan. Kwiatt did not know that the five parcels were held in the CT&T or Hyde Park Bank land trusts. Kwiatt testified that he "discovered" that the sixth and seventh parcels were held in land trusts at the Exchange National Bank. He received a trustee's deed for those two parcels, and then the decedent executed a quitclaim deed "in trust by Mr. Crooks into his trust agreement."

Stella Stokes Dabney testified that she was the bookkeeper, girlfriend and, later, fiancee of the decedent; they met in early April 1980. In February 1989, they looked for wedding rings during a trip to Acapulco, Mexico. Shortly after the trip, she took the decedent to the hospital where he died from complications resulting from surgery. She also testified that she recorded a telephone conversation on October 24 or 26, 1980, with the decedent. Petitioner's counsel objected to the introduction of the tape on the ground of relevance. Respondents' counsel stated that it was relevant because the conversation was recorded near the time of the decedent's execution of the letter of direction. After laying a proper foundation, a transcript of the tape was admitted into evidence. During the conversation, the decedent told her:

> [M]aybe next week I'm going downtown and I'm going to talk to this lawyer *** he's the one that explained to me about this last year when I made my will out *** and he told me that the way I got it set up that Grace can't touch nothing, not even the house, but she can ask for something for settlement. She can ask for cash—The best they could do for her in a case they ask is a cash settlement because I had everything I got before I married her."

James Crooks, Jr., the decedent's son, testified that the decedent told him in August 1981, "When you and Emmanita get these buildings, maybe you won't be so tight." Emmanita testified that the decedent and his first wife, Christine, earned all the money that was used to purchase the five parcels during their marriage. In 1968, Christine died. The decedent acquired all seven properties before his marriage to Grace in 1976. He converted them to rental properties. Emmanita testified at length about the unhappy marriage between the decedent and Grace: shortly after the wedding, the decedent told her, "I think I made the biggest mistake of my life." The decedent and Grace separated four years later in 1980 and lived apart until the decedent's death in March 1989. According to Emmanita, Grace first learned of the revocable trust after the decedent's death.

Emmanita also testified about her two meetings with Kwiatt and

the decedent in 1979: she stated that the purpose of the meetings was to "make a will because he wanted to make sure that my brother and [she] had his property." Grace did not attend these meetings. In 1987, near Thanksgiving, the decedent told Emmanita, " 'Well, I have got all my stuff in a trust for you all. Everything I have is in trust for you kids.' " This statement was made in front of Emmanita, her husband, James Jr., and Grace.

Grace did not introduce any evidence concerning the decedent's intent.

In a written opinion the trial judge concluded that the five parcels were assets of the estate. He found that even though the will, revocable trust agreement and quitclaim deeds were executed contemporaneously, the effect of the deeds was governed by law, not by the intent of the parties. He reasoned that the quitclaim deeds did not transfer any legal title because title to those parcels was held by the land trustee. He found no basis to invoke a constructive trust because the decedent "did not engage in any wrongful conduct, let alone acquire property wrongfully." He rejected any claim of an equitable assignment because "the quitclaim deeds did not attempt to transfer the equitable interest in either land trust."

■ On appeal, the respondents contend that the trial judge's decision was against the manifest weight of the evidence. The respondents strenuously maintain that the trial judge should have accepted parol evidence concerning the decedent's intent. Implicit in their argument is the assumption that there was an ambiguity in the decedent's will, revocable trust, the quitclaim deeds and the letter of direction. The judge found no ambiguities.

The respondents' claimed "inconsistency" arises when the 1979 documents and 1980 letter of direction are read together. We agree with the trial judge that one may not look beyond the four corners of a trust, will or deed to find an ambiguity if the terms of the document are not ambiguous. Although the quitclaim deeds and letter of direction may appear "inconsistent" with the decedent's overall estate plan, only documents executed contemporaneously and in a single transaction may be construed together. (*Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33, 407 N.E.2d 856, citing *Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 95 N.E.2d 457.) Only the will, revocable trust and quitclaim deeds were executed contemporaneously on July 12, 1979. The letter of direction was not executed until October 31, 1980. The letter of direction, therefore, may not be used to contradict or create an ambiguity with the decedent's will, trust and quitclaim deeds from 1979.

We also agree with the trial judge's conclusion that a fair reading

of the documents executed in 1979 indicates that neither the 1980 letter of direction nor the 1979 documents are ambiguous when those documents are considered in their separate contexts. The letter of direction did not refer to the will, revocable trust or quitclaim deeds nor did the decedent ask that the trustee's deed be made out to him as trustee of his revocable trust. Although the intention of the settlor is paramount in the construction of trust arrangements or a will, "[A] court is limited to establishing not what the settlor 'meant to say,' but rather what was meant by what he did say.' " (*Kavanaugh*, 86 Ill. App. 3d at 41, quoting *Howard v. Morse* (1973), 14 Ill. App. 3d 630, 633, 303 N.E.2d 166.) Even when looking at the quitclaim deeds, there is nothing ambiguous that would require parol evidence. In *Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 177 N.E.2d 194, the supreme court rejected any parol evidence concerning the grantor's intent in executing a quitclaim deed, "The deed was unambiguous and its legal effect cannot be changed by parol evidence that it was intended to have a legal operation different from that which would be imported by its terms." (*Jackson*, 23 Ill. 2d at 55.) Thus, the trial judge properly disregarded the parol evidence concerning the decedent's intent in 1979 or 1980.

The respondents maintain that the will, revocable trust and quitclaim deeds are ambiguous on their face because no "attached schedule" could be found; this schedule of properties was referred to in the revocable trust. It is undisputed, however, that the decedent attempted to transfer the five parcels from land trusts into the revocable trust; thus, the "attached schedule" is unnecessary. We conclude that the crux of this case boils down to the following: May a beneficiary of a land trust convey his beneficial interest to a revocable trust, or anyone else for that matter, by executing quitclaim deeds? The trial judge answered that question in the negative. He found, based on fundamental principles of land trust law, that the decedent did not possess legal or equitable title when he executed the quitclaim deeds in 1979; thus, he could not convey what he did not own. We agree with the reasoning of the trial judge.

■ The trustee of an Illinois land trust has both legal and equitable title to the property, and the beneficiary's interest is personal property. (*Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 185 N.E.2d 670.) The owner of a beneficial interest in a land trust is accorded four basic powers: (1) to possess, manage and physically control the real estate; (2) to receive all income generated by the properties; (3) to direct the trustee in dealing with title to the real estate; and (4) to receive the proceeds of any sale of the property made pursuant to the power of direction. (*Pat-*

*rick v. Village Management* (1984), 129 Ill. App. 3d 936, 473 N.E.2d 493.) The land trustee takes title to the property; the trustee makes a deed and conveys property out of the trust only on the written direction of the beneficiary. The land trust agreement states that "no beneficiary now has, and no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable."

■ The decedent executed quitclaim deeds when he did not hold legal or equitable title to the parcels; under the land trust's terms, he contracted away those rights and is bound by the terms of his agreement. It is well established that a beneficiary may not enter into a land trust agreement with a trustee and then deal with the property as if no trust existed; persons dealing with the trust property must strictly observe the trust's features. (*Kortenhof v. Messick* (1974), 18 Ill. App. 3d 1, 309 N.E.2d 368.) As this court stated in *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463, 466, 168 N.E.2d 808, 809:

> "The land trust form of land ownership yields certain benefits to the beneficiaries, whether it be effective management, secret ownership, insulation from personal liability or some other advantage. These benefits result from the willingness, on the part of the courts of Illinois, to observe the form of the trust transaction. Reducing one's ownership to a beneficial interest brings about this result. Consistency requires, then, the observance by the beneficiary of the form of the trustee's ownership. Retaining the nature of his interest in order to be entitled to the advantages of a land trust, he may not then deal with the property as if no such trust existed."

The respondents contend that the quitclaim deeds transferred the beneficial interests into the revocable trust because (1) quitclaim deeds convey all interests in real estate, and (2) a beneficial interest is an "interest" in real estate. They rely on selective language from one case to support their argument that a beneficial interest holder under a land trust "has an interest in the real estate *res* \*\*\* for some purposes." (*IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, 955, 499 N.E.2d 1012.) *IMM Acceptance* is inapplicable because the sole issue on appeal was whether the statute of frauds applied to the sale of a beneficial interest in an Illinois land trust; there was no discussion of whether a quitclaim deed could convey a beneficial interest.

In *IMM Acceptance*, the plaintiff sought specific performance or, in the alternative, money damages for the defendant's breach of an alleged oral contract to sell the beneficial interests from two land

trusts. The court was asked whether a land trust beneficiary had an "interest in or concerning" the land for purposes of the statute of frauds. The court held that, "[W]hile the beneficiary does not hold a direct interest in the title to the real estate, his 'ownership' interest would appear to fall within the broad wording of the statute of frauds." (*IMM Acceptance*, 148 Ill. App. 3d at 955.) Before reaching that holding, the court found that a beneficiary "may have an interest in the *res* of an Illinois land trust for some purposes."

A reading of the cases which the court in *IMM Acceptance* relied upon indicates that any discussion of a beneficiary's interest "for some purposes" does not answer the question of whether a beneficiary may transfer a beneficial interest by a quitclaim deed. The court first cited *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540. In that case, the supreme court held that a beneficiary of a land trust is the "owner" of the real estate for purposes of real estate taxation. The court noted that, even though a beneficiary may be an "owner" for some purposes, holding title was distinct from ownership, "Title to property does not necessarily involve ownership of the property." (*Chicago Title & Trust Co.*, 75 Ill. 2d at 489.) In the other case cited in *IMM Acceptance*, the court referred to an appellate court holding that a land trust beneficiary had an "interest in property" for purposes of filing a cross-petition in an eminent domain proceeding. (See *Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 356 N.E.2d 1245.) That court also stated that, "[A] beneficiary who chooses the advantage of the land trust form of ownership may not also act contrary to the terms of the agreement as if he had legal and equitable title *when it suits his convenience* ***."* (Emphasis added.) (*Department of Conservation*, 43 Ill. App. 3d at 380.) While we accept the plaintiff's proposition that a land trust beneficiary has an interest in the real estate *res* of the land trust "for some purposes," those purposes have been limited to cases involving the statute of frauds, real estate taxation and an eminent domain proceeding. The cases relied upon by the court in *IMM Acceptance* and those cases cited by the respondents do not support a modification or alteration of the fundamental principle of land trust law that the trustee holds legal and equitable title and that only the trustee may deal with or convey title.

■ The respondents also contend that, even if the quitclaim deeds did not convey title, the deeds operated as an "assignment" of the decedent's beneficial interests to his revocable trust. They rely on the case of *Stoller v. Exchange National Bank* (1990), 199 Ill. App. 3d 674, 557 N.E.2d 438, for the proposition that the quitclaim deeds assigned the decedent's beneficial interests. In *Stoller*, a bank brought

an action against the borrowers to recover indebtedness due on notes secured by property in a land trust. This court held that the bank had a valid security interest in the beneficial interest of the land trust and that the beneficiaries effectively assigned their interests through a hypothecation agreement. It must be noted that in *Stoller*, the hypothecation agreement specifically identified the debtors' beneficial interest as the subject matter of the assignment; the legal description or *res* of the trust was not mentioned as the subject matter of the assignment.

We agree with the trial judge that the only "identifiable interest" that a land trust beneficiary may assign is the beneficial interest. The decedent's quitclaim deeds did not refer to the beneficial interest, but recited the actual legal descriptions of the parcels. We are mindful of this court's statement in *Favata v. Favata* (1979), 74 Ill. App. 3d 979, 985, 394 N.E.2d 443, 448: "[The] settlor must accept both the benefits and burdens of the land trust form of ownership. One necessary burden is artful drafting pertaining only to his interest in personalty." In that case, the settlor-beneficiary of a land trust attempted to transfer a remainder interest in his real estate; this court held that the amendment to the land trust agreement was invalid because it referred to real estate and not to the settlor's beneficial interest. We judge that the execution of the quitclaim deeds did not assign the decedent's beneficial interest to his revocable trust.

Alternatively, the respondents argue that the quitclaim deeds operated as an "equitable assignment" of the decedent's beneficial interests. They rely on the following statement from *Hogan v. Dalziel* (1963), 40 Ill. App. 2d 19, 29, 188 N.E.2d 367, 372:

"Equity always looks to the substance rather than to the form; no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership in the assignee is sufficient to effect an assignment in equity; to constitute an assignment there must be a purpose to assign or transfer the whole or a part of some particular thing, debt, or chose in action, and the subject matter of the assignment must be described with such particularity as to render it capable of identification; no greater particularity, however, is required than is actually necessary to do this, with the aid of the attendant and surrounding circumstances ***."

The respondents seek to invoke principles of equity in order to avoid the "identifiable interest" problem. However, the same obstacle remains. Although "no great particularity" is required to identify the subject matter for an equitable assignment, the decedent's quitclaim deeds identified only the *res* of the trust, the actual legal

descriptions of the properties. The decedent failed to identify his beneficial interests in the deeds, which is the only identifiable interest the decedent could convey. Consequently, the respondents' equitable assignment argument suffers from the same flaw as the their legal assignment argument.

■ Finally, the respondents claim that a constructive trust should be imposed because the decedent operated under a mistake of fact. They maintain that a mistake of fact alone is sufficient to impose a constructive trust. In *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 293, 499 N.E.2d 1319, 1326, our supreme court stated that "[a] constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct. *** Some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust." We agree with the trial judge that the decedent did not engage in any wrongful conduct nor did he acquire the parcels wrongfully. The only conduct that led to the confusion in this case arose from the decedent's failure to tell his attorney that the parcels were held in land trusts; the respondents may not now claim that, as a result of the decedent's omission, the petitioner "wrongfully" acquired interests in the parcels. The respondents attribute no wrongdoing to the petitioner nor have they shown that she "unfairly holds" a property interest. Accordingly, there is no basis to impose a constructive trust.

We conclude that the quitclaim deeds did not transfer the decedent's beneficial interests into his revocable trust in 1979. The beneficial interests remained intact until 1980 when the decedent directed the CT&T trustee to convey a trustee's deed to the decedent individually. The decedent did not direct the trustee to name the revocable trust as grantee. Since the title to the properties remained in the name of the decedent individually, the four parcels became assets of his estate on the date of his death; accordingly, the executrix should have inventoried them as assets. The decedent never delivered any letter of direction to the Hyde Park Bank land trustee; accordingly, that property remained as personalty of the decedent that also should have been inventoried.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.